This is a suit by a tenant against his landlord for damages occasioned by the alleged illegal entry of the latter upon the leased premises and the removal of personal property therefrom. Plaintiff alleges that, on September 21, 1942, he was a lessee of the premises No. 3816 1/2 Third Street in the city of New Orleans, under a verbal weekly lease; that, on said date, he was dispossessed and ejected therefrom by the defendant without legal process; that the defendant removed his household goods and effects from the premises and that he continues to hold said property, despite amicable demand for the return of it and that, as a result, he has suffered the following damages: $300, representing the value of the personal property taken by the defendant annd $1000, for embarrassment and humiliation.
After interposing an exception of no cause or right of action to plaintiff's petition, which was overruled, the defendant answered and denied the allegations of fact contained therein. For further answer, he averred that, whereas plaintiff had been his tenant, he abandoned the leased premises in June 1942 when he was inducted into the Army; that, three months after plaintiff's induction into the Army, he took possession of the premises, as thus abandoned, for the reason that plaintiff was paying no rent and that he placed the property of plaintiff, for safekeeping, in another part of the same premises. He further declared that, while he had the legal right to the physical detention of plaintiff's effects under his landlord's pledge and privilege for payment of past-due rent, he has at no time refused to deliver the possession of these effects to plaintiff.
After a trial on the issues thus joined, there was judgment in favor of plaintiff and against the testamentary executor of defendant's succession (defendant having died after the trial but before judgment was rendered) for damages in the sum of $500. Hence this appeal.
The record reveals the following facts: The defendant, an elderly colored man, was the owner of the property Nos. 3814-3814 1/2-3816-3816 1/2 Third Street in the city of New Orleans. He lived in three rooms of these premises and rented the other rooms by the week to various tenants. On and before June 20, 1942, the plaintiff, also a colored man, was renting and occupying one of the rooms in defendant's property with his concubine (or "common-law wife"), one Beulah Butler, under a verbal lease at a rental price of $1 per week. On June 20th plaintiff, having been inducted into the United States Army and being required to report for duty, left all of his personal property on the leased premises in the care of Beulah Butler, who says that she occupied the premises continuously thereafter, until September 21, 1942, when the defendant, without any notice and at a time when she had temporarily left the room in order to seek work, broke into the room and removed all of the personal effects belonging to plaintiff and herself. Beulah Butler further testifies that, when she returned to the premises and discovered that the furniture and other personal property had been moved, she immediately contacted the *Page 183 
defendant and asked him what had happened; that he replied "I told my wife to break that glass and get in there and take the furnitures out and put them out in the yard" and that he further remarked that he had the right to tear up anything around the house "because this is my personal property and I don't owe anybody anything on it and I can do whatever I want to." She also asserts that, immediately after her conversation with defendant, she communicated with plaintiff, who was then in Washington, and that the Red Cross organization loaned plaintiff the money to come to New Orleans to take the matter up with the defendant.
Plaintiff testifies that, when he received the letter from Beulah informing him that the defendant had taken his furniture and other personal belongings out of the premises and that she was without a place to live, he secured a special furlough and returned to New Orleans; that, upon reaching the city, he went to see the defendant and asked him why he had removed the furniture and other effects and that defendant told him that, since he was the owner of the premises, he could do "what he pleases". Plaintiff admitted that, at the time he was inducted into the Army, he owed the defendant three weeks rent and that he did not pay any rent thereafter.
Defendant testified, in substance, that, on or about September 21, 1942, he told his brother to go to plaintiff's room and move all of the furniture and personal belongings of plaintiff and Beulah Butler; that, at the time this was done, plaintiff and Beulah Butler had long since abandoned the premises and that there was no one occupying the room; that all of the effects of plaintiff and Beulah were placed in a garage situated on the premises and that, when plaintiff came back to inquire about his personal property, he told plaintiff "take your furniture and go, and the rent you owe me, you don't need to pay me. Just take yourself out * * * your stuff is downstairs."
At the conclusion of defendant's testimony, the case was continued by the court for the purpose of permitting opposing counsel and their clients to proceed to the premises of defendant to ascertain if the articles of property claimed by plaintiff were still in defendant's possession. Thereafter, when the hearing was resumed, counsel for plaintiff reported to the court that he and his client visited the premises of defendant and that defendant was unable to point out to them any article of personal property which he had taken from the room occupied by plaintiff. In view of this report, the trial judge, ex proprio motu, reopened the case for the taking of additional testimony. Upon the resumption of the trial, Beulah Butler and plaintiff again took the stand and testified that, in accordance with the previous agreement of the parties, they had repaired to defendant's premises, in company with counsel; that they asked defendant to point out any furniture or other property belonging to plaintiff which he had retained in his possession; that defendant brought them to his garage, which was used as a storage room; that this garage contained some old, broken furniture; that none of the furniture or other personal effects of plaintiff was contained in the garage and that defendant was unable to point out any article which had been removed at his direction from the leased premises. They further testified, in detail, respecting the articles of furniture and the personal belongings of plaintiff which were contained in their room and which had been removed therefrom by defendant. These effects, which are specified in plaintiff's petition, consist, in the main, of usual household articles — such as an electric iron, dishes, glasses, pitchers, table, zinc tub, blankets, quilts, ice box, bed, spring, pillows, pillow slips, sheets, etc. In addition to this, plaintiff claims that defendant removed his personal clothing, consisting of five suits, nine pairs of shoes, two pairs of boots and five suits of underwear; also a watch valued at $85 and two automobile tires and tubes valued at $47.55. Plaintiff produced duplicate bills exhibiting the purchase price of the automobile tires and also a bill for the furniture, which he alleges was taken by the defendant, amounting to $115.54. He also stated that the five suits taken by defendant cost him in excess of $30 apiece and were valued at least at that sum. Estimated values were likewise placed by plaintiff and Beulah Butler upon the other property removed by the defendant. An examination of their testimony on this question discloses that all of the property removed by defendant was worth greatly in excess of $300 which is the total value alleged in the petition. *Page 184 
After the foregoing testimony was adduced, defendant did not see fit to again take the stand and deny the assertions of plaintiff and Beulah Butler nor did he subpoena his brother to testify at the trial.
The judge of the lower court, in awarding damages in the sum of $500 to plaintiff, was apparently of the opinion that plaintiff's evidence preponderated over that of the defendant. We not only fail to discover manifest error in his ruling but are convinced that his appraisal of the facts was eminently correct.
[1] Counsel for defendant, in argument and in brief, tells us that defendant had the legal right to break into the room occupied by plaintiff and Beulah Butler and remove therefrom the property of plaintiff for the purpose of protecting his right of pledge for the past-due rent owed by plaintiff, in view of the fact that plaintiff abandoned the premises at the time he was inducted into the Army. If we should concede arguendo that Article 3218 of the Civil Code, which is relied upon by counsel, authorized defendant to break into the room and seize the effects of plaintiff for the protection of his landlord's privilege, this defense would be unavailing to defendant under the facts of the case in view of his testimony that he did not remove plaintiff's property in order to protect his landlord's lien for the payment of the rent but because he wanted the room emptied of the personal belongings of plaintiff for the purpose of renting it to another party. On redirect examination, defendant testified as follows: "I wanted the room emptied and he (meaning his brother) moved the stuff out of the room into the garage in order that I could rent the room." (Words in parenthesis ours.) Thus, we see that defendant cannot now belatedly claim that he was within his legal rights in invading plaintiff's quarters and seizing his property as security for payment of past-due rent.
[2] Furthermore, we are unable to agree with the theory of counsel for defendant that plaintiff had abandoned the leased premises at the time he went into the Army. These premises, to the knowledge of defendant, were occupied by plaintiff and his "common-law" wife. When plaintiff was inducted into the Army, he 'left his effects on the premises in the possession of Beulah Butler, who remained in occupancy of the room until after defendant removed all of the personal property therefrom. And, while defendant denies that Beulah continued to occupy the premises after plaintiff left, we think that her testimony preponderates — for it seems unlikely to us that she would abandon the rented room for a period of three months and leave all of plaintiff's, as well as her own, personal belongings therein. The truth is, we think, that defendant, as he admits in his testimony, was anxious to get possession of the room in order to rent it to another person and that, instead of pursuing the lawful method of an ejectment proceeding, he took it upon himself, at a time when Beulah Butler was temporarily absent, to break into the room and remove the personal effects therefrom. This was an unlawful act for which defendant is required to respond in damages. See Lansalot v. Mihaljevich, 12 La. App. 174, 125 So. 183. This is not a case like Reed v. Walthers, La. App., 193 So. 253, where the lessor padlocked the leased premises to prevent the lessee from removing his movable effects on which lessor had a right of pledge and retention under Civil Code, Articles 2705 and 3218. Nor is it a case such as Wolf v. Cuccia, 144 La. 336, 80 So. 581, where the landlord was held to be guilty of a technical violation of the tenant's contractual rights under Civil Code, Article 1930 et seq., where he acted too hastily in asserting his right to possession, against his tenant's protest, upon the theory that the tenant had abandoned and vacated the property. Conversely, the facts presented here disclose that the defendant, knowing that plaintiff had left the premises for the purpose of joining the Armed Forces and that his so-called "common-law" wife was in possession thereof, took the law into his own hands by invading the premises and removing therefrom the personal property of plaintiff for the specific purpose of obtaining possession of the room so that he could lease it to another person.
[3,4] Since we find that the judge correctly held that defendant was liable, it remains only to determine the quantum of damages to which plaintiff is entitled. Of the $500 damages awarded below, $300 represents actual damage sustained by plaintiff — for, as above stated, it has been established, with reasonable certainty and without contradiction, that the value of the personal property taken by defendant, and unaccounted for, is at least that amount which is the sum claimed in the petition. Therefore, the judge must have concluded, *Page 185 
that $200 would represent fair compensation to plaintiff for the unwarranted acts of defendant.
Defendant asserts that this amount is highly excessive and plaintiff has answered the appeal praying for an increase in the award. It is perfectly obvious to us that the acts of defendant caused plaintiff considerable inconvenience and some expense as it became necessary for him to obtain a special furlough to come to New Orleans for the purpose of asserting his rights. After due deliberation, we think that the sum of $200 is neither excessive nor inadequate being in conformity with previous awards generally given as compensatory damages in this type of case. See Vogt v. Jannarelli, La. App., 198 So. 421, and Walsh v. Bush, La. App., 20 So.2d 190.
For the reasons assigned, the judgment appealed from is affirmed.
Affirmed.