CARAWAY, J.,
dissenting.
hThe Defendant’s resort of self-help in this case caused damages to Plaintiff. There is a clear equity in Plaintiffs favor. Nevertheless, I must dissent because the trial court and the majority’s punishment of Defendant does not fit his crime and conform to our law of obligations and contract.
The trial court’s judgment before us provides that “it is further ordered, ad-: judged and decreed that Defendant is not entitled to ... future rents.”
. Importantly, the disruption of Plaintiffs business and leasehold was for only two months. The trial court found that Defendant violated the 5-year lease and took over the business premises in early April 2014. Plaintiffs suit was filed on May 15, 2014, and the preliminary injunction enjoining Defendant from interfering with the business equipment, its assets and Plaintiffs leasehold possession was entered on May 27, 2014. In the face of this 2-month self-help escapade by Defendant, Plaintiff did not sue for rescission of the lease or the sale of the business. ' Yet, on the 5-year lease contract, extending from 2014-2018 at $4,500 per month, the trial court ruled that Defendant’s action results in the relinquishment of rents for the remaining 55 months of the - léase ’ (June 2014-December 2018), or $247,500 in future rents. The judgment did not terminate the lease, since Plaintiff never sought termination. Plaintiff was awarded a paid-up lease, and Defendant lost $247,500 and the use of his property. Without any citation of Louisiana’s law of lease by the majority, the judgment makes this award in error.
I aThe lessor owes the warranty of peaceful possession. La. C.C. art. 2700. As addressed in the Revision Comment (b) to Article 2700:
(b) When the lessor interferes with the lessee’s peaceful possession through the lessor’s own acts or thbse of persons acting on the lessor’s behalf, the- lessor is .in direct breach of this warranty obligation. The consequences of this breach are determined under the provisions of the Titles of “Obligations in General” and “Conventional Obligations or Contracts” which are made applicable-by Civil Code Articles 2669 and 2719 (Rev. 2004). Depending on the circumstances, the lessee’s remedies may consist of damages, injunctive relief, or dissolution of the lease. See Lacour v. Myer, 98 So.2d 308 (La.App, 1st Cir.1957); Butler v. Jones, 21 So.2d 181 (La.App.Orl.1945); Eddy v. Monaghan, 60 So.2d 717 (La.App.Orl.1952); Fontenot v. Benoit, 128 So.2d 815 (La.App. 3 Cir.1961); Lansalot v. Mihaljevich, [12 La.App. 174] 125 So. 183 (La.App.Orl.1929).
Plaintiff did not seek rescission of the lease. Plaintiff only sought the remedies of damages and injunctive relief to place her back into possession of the lease premises and to enjoin Defendant from acting on the property and interfering with business assets. The May 27 injunctive order indicated that Defendant’s rights to act concerning the property as lessor remained, but that otherwise he was enjoined from ’ further disturbances of the business. Plaintiff therefore was returned to her possession of the lease premises, and since no rescission of the lease was sought, the Plaintiffs obligation to pay rent (offset .by any damages) for the 5-year term remains. The punitive remedy denying Defendant future rents of $247,500 is unsupported by law and should be reversed.
The second error in the majority ruling concerns the nature of the contract which transferred the business to Plaintiff. At the preliminary injunction hearing, both *629 parties testified that' Defendant’s initial asking price | sfor his business was $247,000. Yet, when the Defendant chose to channel $220,000 of this value for his business into a separate 10-year noncom-pete agreement for some kind of tax dodge arrangement, his sale of the business, according to the majority, became a “bad deal.” On its face, if one somehow accepts the oddity of a 10-year pay-as-you-go non-compete contract, it was not a “bad deal”; it was a null deal and the majority and the trial court so recognized.
Every contract or agreement, or provision thereof, by which anyone is restrained from exercising a lawful profession, trade, or business of any kind, except as provided in La. R.S. 23:921, shall be null and void. SWAT 24 Shreveport Bossier, Inc. v. Bond, 00-1695 (La.6/29/01), 808 So.2d 294, 298. Any noncompetition clause that extends beyond two years after the sale is null and void and unenforceable. Millet v. Crump, 96-639 (La.App. 5th Cir.12/30/96), 687 So.2d 132; La. R.S. 23:921(B).
Again, if this $220,000, 10-year installment, noncompete contract is taken at face value and considered as a stand alone contract, the bilateral exchange of the parties must be understood as follows. The Plaintiffs new business was apparently* so threatened by the Defendant starting a new competing business that the Plaintiff was willing to pay a considerable sum in order to stop that competition for 10 years. That would be Plaintiffs intent for such contract. Plaintiff never breached her installment obligations of $2,442.45 per month (with 6% interest); yet she was denied her 10-year bargain by the majority’s rewriting of the ■ contract, reducing Plaintiffs protection to only 2 years. On the other hand, the Defendant retired and Lparted with his business that he had built up over his lifetime; yet he was expected to pose a competitive threat for ,10 years, long after the Plaintiffs business would have obtained its own competitive position.
Were these really the parties’ motives in this transaction? A noncompetition agreement, which is usually an incidental agreement to' an employment contract or sale of business, has become an anomalous oddity in this case. When the contract is nullified for its last 8 years and $234,475 in installment protection denied Plaintiffs business, how can that large value of the parties’ presumed bargain be ignored and discarded?
The majority’s application of a severance clause to this large and valuable 8-year segment of a null contract ignores the law of nullity, even if the contract can somehow be understood to stand alone apart from the sale of this business. The presumed mutual intent and unlawful cause of such an' installment, noncompete agreement, produced a result against public policy and would therefore be a total nullity if the real intent were not so clearly apparent. La. C.C. arts.1968 and 2034. Consistent -with the concept of motive and cause, a court should not rush to nullify this 10-year installment contract, destroying $234,475 of the value exchanged, when' a credit sale of the business was certainly the primary cause of the contract. From the nature of the overall transaction, it must be presumed that the sale by Defendant would never have occurred had this $234,475 segment of the agreement been understood by the parties as a nullity from the start.
In summary, the Defendant sold his business, its assets and goodwill, that he had built for years with the expectation of substantial monthly | ^payments for his retirement years. The unexpected death in this case was a great family loss and tragedy for the Plaintiff, and the Defendant’s damaging self-help response may be substantially remedied by an,- award for the *630 damages he caused in the 6-week disruption of the business. Yet, by denying the Defendant $247,500 in future rents for the lease and $234,475 for credit installments for the sale of his business, the majority has misapplied our law of lease and obligations. Plaintiff did not sue to rescind the 5-year lease or the sale of the business. She did not pray for or suffer $481,975 in damages. I would reverse.