(109 So. 776)

No. 27662.

**LOUISIANA FARM BUREAU COTTON GROWERS' CO-OP. ASS'N v. BANNISTER.**

**In re BANNISTER et al.**

(March 29, 1926. On Rehearing, Oct. 5, 1926.)

*(Syllabus by Editorial Staff.)*

Agriculture ☞6—Cotton growers' co-operative association held not entitled to compel member to deliver cotton of "share tenants" raised on his land (Act No. 100 of 1906; Act No. 211 of 1908; Act No. 57 of 1922).

Cotton growers' co-operative association, organized under Act No. 57 of 1922, *held* not entitled to compel member under marketing agreement to deliver cotton of tenants raised on shares on member's land, where such tenants were not parties to agreement, and claimed possession and ownership of cotton by intervention and third opposition, in view of Act No. 100 of 1906 and Act No. 211 of 1908; "share tenants" being lessees and not employees.

St. Paul, J., dissenting on rehearing.

Action by the Louisiana Farm Cotton Growers' Co-operative Association against W. E. Bannister, in which Robert Gill and another intervene as third opponents. Judgment for defendant was reversed by the Court of Appeal, and defendant and interveners and third opponents apply for certiorari or writ of review. Judgment of the Court of Appeal annulled and that of district court reinstated and affirmed.

Ott & Johnson, of Franklinton, for applicants.

Aaron Sapiro and Robt. S. Marx, both of Chicago, Ill., and Taylor, Porter, Loret & Brooks, of Baton Rouge, for respondent.

ROGERS, J. Plaintiff is a Louisiana corporation organized under the provisions of Act 57 of 1922. Defendant is a member of the association, having signed one of its uniform marketing contracts. This contract provides, in substance, that defendant shall deliver to the plaintiff association all the cotton produced or acquired by or for him during the years 1923 to 1927, both inclusive, to be disposed of by the association in the manner and under the terms set forth in the agreement.

Alleging that defendant had produced or acquired not less than six bales, or not less than 3,000 pounds, of lint cotton of the crop of 1924 which he had failed to deliver, although notified so to do, plaintiff brought this suit to compel the specific performance of the contract and to recover $100 as liquidated damages, together with $500 as attorney's fees. Plaintiff prayed for a writ of sequestration, for an injunction pendente lite, and for a perpetual injunction. Two bales of cotton were seized under the writ of sequestration. After a hearing on a rule nisi, the court below ordered the issuance of a preliminary injunction. Thereafter defendant answered, setting up a number of defenses. Subsequently Robert Gill and Ulric Gill filed interventions and third oppositions, in which they alleged they each had raised, as tenants on shares, one of the bales of cotton sequestered, and that under their agreements with defendant each of them owned an undivided

one-half interest in the cotton he had raised.

The district court dismissed plaintiff's suit, dissolved the writs of sequestration and injunction, and gave the interveners judgment for $20 each as attorney's fees for the illegal seizure of the cotton. On appeal by the plaintiff, the Court of Appeal reversed this judgment and rendered judgment in favor of plaintiff for $100 for the cotton sold, withheld, or disposed of in violation of the contract, for $300 as attorney's fees, and maintaining the writs of sequestration and injunction. The matter is now before us under a writ of review.

The legality of the marketing contract is not attacked here. The sole issue in this suit is as to its scope and operation.

As shown by the record, defendant entered into agreements with the interveners, Robert Gill and Ulric Gill, and a third tenant named Slaven, for the production of a crop of cotton for the year 1924 on land owned by defendant. Each of these tenants was allotted a certain acreage on which to raise his crop. The Gills were to receive one-half of the cotton produced by them. Defendant agreed to furnish Robert Gill with teams and equipment, Gill furnishing his own supplies. Ulric Gill was to furnish his own teams, equipment, and supplies. Slaven was to receive three-fourths of the cotton produced, defendant furnishing the teams and equipment and guaranteeing his tenant's account for supplies. None of the tenants were members of the plaintiff association.

As the result of said agreements 12 bales of cotton were produced, 6 bales by Slaven, 5 bales by Robert Gill, and one bale by Ulric Gill. All the cotton was sold prior to the institution of the suit, except the 2 bales which were sequestered. One of these bales was produced by Robert Gill, and the other was the bale produced by Ulric Gill.

Plaintiff's contention, briefly stated, is that all cotton grown on the land of defendant is affected by the marketing contract regardless of any interest a third person, not a member of the association, may have in said cotton, and that one who leases land on a share basis is the sole owner of the crop, such a contract being legally considered as one for hire, and that the only remedy of the producer is to claim a laborer's lien on the thing produced.

Defendant asserts that his right to contract is unlimited; that in good faith he entered into an agreement with his tenants under the terms of which they were to become part owners in the cotton produced; that he was without right to deliver this cotton to plaintiff unless he had acquired the interest of his co-owners by purchase or otherwise; and that under the provisions of the marketing contract he was not obligated either to produce or to purchase cotton.

The interveners and third opponents allege that they are the owners of one-half of the cotton sequestered; that they are not members of, and have no contractual relations with, the plaintiff association, and are not bound to deliver it any of the cotton grown by them.

The theory propounded by the plaintiff association was accepted by the Court of Appeal, which, on the authority of Bres & O'Brien v. Cowan, 22 La. Ann. 438, and Lalanne Bros. v. McKinney, 28 La. Ann. 642, held that the Gills and Slaven were not partners of the defendant, nor his lessees, but merely laborers on his farm entitled to their proportionate share of the cotton only as wages.

We think the Court of Appeal erred in its ruling. In the two decisions upon which it relies the agreements interpreted were essentially contracts of employment. In those cases, as we appreciate the facts set forth in the opinions, the landowners expressly hired certain laborers to cultivate their plantations, giving them in lieu of wages a specific share in the proceeds of the crops. In the instant case the relation between the landowner and

the cultivators of the soil was clearly that of lessor and lessees. Such contracts have received statutory recognition. Act No. 100 of 1906 was expressly enacted to prevent the crops of the lessee from being taken to pay the debt of the landowner, and Act No. 211 of 1908 provides:

"That whenever the lessor leases land to the lessee for part of the crop, that proportion or part of the crop or crops agreed upon by both parties to the contract, which the lessor shall receive, shall be and is hereby declared to be at any and all times the property of the lessor."

In Louisiana Farm Bureau Cotton Growers' Co-operative Association v. Alex. Clark, 160 La. 294, 107 So. 115, No. 26967 of our docket, recently decided, we had occasion to examine and pass upon the form of marketing contract adopted by the plaintiff association. We there held, among other things, that where the lessor leases land to a tenant under a share contract, the crop produced belongs to the lessor and to the lessee, respectively, in the proportions fixed by the contract between them. Since defendant is not the sole owner of the cotton in question here, it is manifest that its disposition is not wholly under his control, and he cannot be held for not doing that which it is legally impossible for him to do.

For the reasons assigned, the judgment of the Court of Appeal is annulled, and it is now ordered that the judgment of the district court be reinstated and affirmed at plaintiff's cost.

### On Rehearing.

LAND, J. The issue before us is as to the right of plaintiff association, a corporation organized under Act 57 of 1922, to compel defendant under a marketing agreement to deliver to the association the cotton of certain tenants raised on shares on defendant's place, although these tenants are not parties to the marketing agreement and have claimed the possession and ownership of the cotton by intervention and third opposition in this case.

After a careful reconsideration of our original opinion, we are convinced that we have correctly held that the interveners, the share tenants of the defendant, do not bear to him the relation of employees to employer, but that of lessees to lessor, and are entitled to their proportionate share of the cotton raised by them as co-owners with the defendant.

Under the facts recited in our original opinion, the contract entered into between defendant and interveners is not one of hiring, and therefore the shares of the interveners in the cotton cannot be considered as in lieu of wages. In other words, the cotton of share tenants is not under the control of the lessor, but under that of the tenants themselves.

We adhere to our holding in the Clark Case that where the lessor leases land to a tenant under a share contract, the crop produced belongs to the lessor and the lessee respectively, in the proportions fixed by the contract between them. Louisiana Farm Bureau Cotton Growers' Co-operative Association v. Alex. Clark, 160 La. 294, 107 So. 115, No. 26967 of our docket.

Necessarily it follows that the defendant cannot be compelled to deliver to plaintiff association cotton of which he is not the sole owner, as it is not legally possible for him to do so without the consent of his co-owners.

It is therefore ordered that our original decree be reinstated and made the final judgment of the court.

ST. PAUL, J., dissents.