BRUNOT, J.
 

 This is a suit for specific performance of an alleged marketing agreement between the Louisiana Farm Bureau Cotton Growers’ Co-operative Association and the defendant John E. Bacon, for a moneyed judgment against Bacon for alleged liquidated damages, and attorney’s fees and costs, and for an injunction restraining Bacon and W. B. Thompson, the other defendant, from delivering, selling, or otherwise disposing of any cotton owned, produced, acquired, or controlled by Bacon during the years 1924, 1925, 1926, and 1927, to any person other than the plaintiff.
 

 The plaintiff is a Shapiro plan co-operative association and it alleges that it is organized under the provisions of Act No. 57 of 1922.
 

 Upon the application of plaintiff the court granted a restraining order and a rule nisi was served upon defendants requiring them to show cause why an interlocutory injunction should not issue. Thereupon Bacon filed a prayer for oyer of the original agreement which the petition alleges he had signed, and of any other original act or contract declared upon by plaintiff. The prayer for oyer was granted and complied with. Bacon then moved to dissolve the temporary restraining order. The record does not disclose whether or not the motion to dissolve the restraining ord.er was disposed of, .but this is immaterial, for the rule nisi was answered and heard .and plaintiff was granted a temporary injunction. Both defendants then answered.the suit.. ..The answer of defendant Thompson is a denial, on his part, of any personal knowledge of the matters alleged in the petition, except thdt the cotton referred to therein was shipped, in the name of J. E. Bacon, to the firm of W. B. Thompson & Go., a commercial firm engaged in the commission business and in which firm he has an interest. This defendant avers that he is not engaged in the commission business in his individual capacity; that he has had nothing to do with Bacon’s cotton; that the injunction, as to him, was unwarranted; that the services of the attorneys he has been compelled to employ to dissolve said injunction are well worth the sum of $750; and, as plaintiff in reconvention, he claims said sum, and prays .for a judgment in his favor on his reconventional demand and for the dissolution of the injunction, as to him.
 

 The answer of defendant Bacon is lengthy. It appears in the transcript at pages 59 to 83, both inclusive. It is sufficient to say that it puts all of the allegations of the petition upon which plaintiff’s demands are based at issue; it specifically charges the plaintiff with the violation of a sacramental suspensive condition; and it alleges that the wrongful issuance of the injunction has caused defendant to suffer actual damages in the sum of $7S4.89, and in addition thereto, to obligate himself to pay $750 for the services of attorneys to defend the suit and secure the dissolution of the injunction. The prayer is for the dismissal of the suit and for judgment on the reconventional demand for the sums stated. Following the joining of issue by answer defendant Bacon filed a prayer for oyer of all of the original contracts the plaintiff association had entered into with other persons associated with him. The prayer was excepted to and denied. Defendant Bacon then applied for and obtained an order directing the issuance of a subpoena duces tecum commanding. the plaintiff to produce in court the origi
 
 *129
 
 nal association agreements signed prior to January 1, 1923. On exception thereto this order was modified and plaintiff was permitted to produce sworn copies of the contracts called for in the subpoena duces tecum, in lieu of the originals. The case was tried and judgment was rendered therein, dissolving the injunction and dismissing the suit as to both defendants at the plaintiff’s cost, and dismissing the reconventional demands of both defendants as of nonsuit. From this judgment the plaintiff alone appealed. No answer to the appeal has been filed and neither appellee has asked for an amendment of the judgment.
 

 There are 11 defenses to the suit, including an independent or individual defense which is urged by W. B. Thompson alone; and, while all of the defenses pleaded are insisted upon, it-is contended by counsel for defendants that three of said defenses are conclusive of the case. These defenses are as follows :
 

 First: “A marketing agreement between a cotton grower and a .co-operative association organized under Act 57 of 1922 cannot be enforced against the cotton crop raised on the plantation of a member, where such cotton was all raised on the share system and tenants or other persons not members of the association have an undivided interest in each bale of said cotton.”
 

 Second: “The owner of a plantation on which cotton is raised is a ‘farmer’ entitled to borrow money and pledge crops, under Act 66 of 1874, for money advanced him by another to enable his share tenants to raise crops. * * * A co-operative association organized under Act 57 of 1922 cannot demand delivery of crop of member covered by a recorded pledge without prior payment of debt or written consent of pledgee.
 

 “Under the provision of article 3217 of Uivil Code, a privilege exists on the annual crops of a farm, in favor of debts due for necessary supplies or for money actually advanced and used for the purchase of necessary supplies and the payment of necessary expenses for any farm or plantation. Such crop privileges, like other privileges created by law upon moveable property, exist without written contract and without registry. A marketing contract of a cooperative association can no more be enforced to the prejudice of an unrecorded privilege existing under Civil Code 3217, than against a recorded pledge under Act 66 of 1874.”
 

 Third: “The preliminary application for membership signed by defendant (Bacon) when plaintiff co-operative association was in course of organization contained a s'uspensive condition to the effect that the marketing agreement should not become operative unless the organization obtained by January 1, 1923, a minimum sign-up of members covering at least 75,000 bales of cotton on the basis of the 1921 crop, and expressly provided for the release of subscribers, should this condition not be fulfilled. The organization committee failed to obtain the agreed minimum sign-up of balage by the date fixed, and defendant (Bacon) demanded a release as soon as he discovered this fact. Under these facts the preliminary application for membership never became an effective contract as against defendant, and cannot be enforced against him.”
 

 With respect to the independent defense of Mr. W. B. Thompson, we will say here that Mr. Thompson was cited and enjoined in his individual capacity, and not as a member of the co-partnership which handled the cotton that is involved in this suit. It is elementary that service on a partnership can only be made by citation expressly directed to the partnership and served upon a member of the firm.
 

 This case presents the same issues which we have twice considered and decided, first in the Clark Case, 160 La. 294, 107 So. 115, and more recently in the Bannister Case, 161 La. 957, 109 So. 776, and counsel for plaintiff, both in brief and argument, frankly admit that the present appeal is prosecuted in the hope that this court will overrule or modify those decisions.
 

 In the Clark Case, 160 La. 294, 107 So. 115, we held that Act 57 of 1922 was not unconstitutional as embracing more than one object, or that the title does not indicate its object. We also, held that the act does not, on its face, • authorize the making of contracts in restraint of trade; that the co-operative association’s marketing agreement was not a
 
 *131
 
 unilateral contract and void for lack of mutuality ; that it was not void as being based, as to its performance by the association, on a potestative condition, or as declaring a sale of its members’ cotton without first fixing the price. With respect, however, to other provisions of said act, we held that section 17 (c) is unconstitutional for several reasons: First, because it is violative of the due process clause, sections 2 and 6 of the Bill of Rights of the Constitution of 1921 and the Fourteenth Amendment of the federal Constitution; second, because it is an invasion of the constitutional right to liberty of contract secured to tenants by the Fourteenth Amendment of the federal Constitution; and, third, because it is violative of the equal protection clauses of the state and federal Constitutions. We held that paragraph (c) of section 17 of the act was, for the reasons stated, stricken with nullity, in its entirety, and it is upon the provisions of the said paragraph (e) that this and the two prior suits are primarily based.
 

 In the Bannister Case, 161 La. 957, 109 So. 776, we referred to the Clark Case, cited supra, and said:
 

 “In Louisiana Farm Bureau Cotton Growers’ Co-operative Association v. Alex. Clark, 160 La. 294, 107 So. 115, No. 26967 of our docket, recently decided, we had occasion to examine and pass upon the form of marketing contract adopted by the plaintiff association. We there held, among other things, that, where the lessor leases land to a tenant under a share contract, the crop produced belongs to the lessor and to the lessee, respectively, in the proportions' fixed by the contract between them. Since defendant is not the sole owner of the cotton in question here, it is manifest that its disposition' is not wholly under his control, and he cannot be held for not doing that which it is legally impossible for him to do.”
 

 Upon the application of plaintiff a rehearing was granted in the Bannister Case, primarily for the purpose of considering if there was merit in the contention then made that, although Bannister might own the cotton in indivisión with his tenants, he was none the less obligated to sell and deliver his undivided part of it to the plaintiff, and our conclusion was that the Legislature of this state is powerless to make the tenants of a member of the association parties to the marketing contract by mere compulsion, or to subject them or their property to the remedies provided in said act for nondelivery or breach of that contract; that questions of staple, value, weight per bale, and other elements were to be considered in determining whether the cotton could be equitably divided in kind; and that the property of the tenants and their right to hold and sell their cotton at such time as they desired and to such person as they chose could not be affected either by the plaintiff’s marketing agreement or by any of the provisions of Act 57 of 1922. We therefore reinstated the original judgment, and in doing so we merely repeated what was said in the original opinion in the paragraph immediately preceding the decree.
 

 We are of the opinion that no new issues are presented in this case and that the decrees in'the Clark and Bannister Cases are founded upon correct expressions of the law and should be adhered to. As these conclusions are decisive of the case, it is not necessary to consider the other defenses pleaded.
 

 For these reasons, the judgment appealed from is affirmed, at appellant’s cost.