### HAMMOND v. LAFFERTY.
No. 6030.

Court of Appeal of Louisiana. Second Circuit.

Dec. 1, 1939.

James H. Gilfoil, Jr., of Lake Providence, for appellant.

Ransdell & Norris, of Lake Providence, for appellee.

HAMITER, Judge.

A verbal agreement was entered into during the early part of January, 1938, by and between the plaintiff, W. S. Hammond, and the defendant, Sam Lafferty, under which the former agreed to cultivate on a half share basis approximately 34 acres of land possessed by the latter and located in East Carroll Parish, Louisiana.

In addition to providing said acreage, defendant contracted to furnish to plaintiff a house, implements and equipment necessary to raise cotton, corn, and other agricultural products, and to advance certain cash and supplies. It was also agreed that after the harvesting of the crops Hammond would receive one-half of the gross proceeds therefrom; and out of such he would reimburse Lafferty for the cash and supplies advanced.

The agreement further provided that when plaintiff was not engaged in his farming operations, he would perform day labor for defendant at the rate of $1 per day, payable at the time of final settlement on the crops.

About January 18, 1938, Hammond, together with his family, moved into a house located on the tract and immediately began preparing the land for cultivation. His family consisted of his wife, three daughters, and two sons whose ages were then seventeen and twelve, respectively.

During the month of March, 1938, he sustained a serious injury to one of his feet while plowing, and thereafter was unable to perform any physical work. His sons, who had previously assisted him, carried on his plowing and planting.

Lafferty, on or about May 1, 1938, went to Hammond's house and ordered him to discontinue his farming operations and to move from the property; and offered to release him from his indebtedness resulting from the advances. This order followed a disagreement that occurred between the two regarding the proper method of preparing the land for planting, and also followed a quarrel that arose because of the kind of reception given Mrs. Lafferty by Hammond when she called at his house to talk with him. The husband claims that she was then treated discourteously. Hammond refused to obey the removal order given him. He remained on the premises and sought to continue the cultivation through the efforts of the members of his family. No further cash and supplies were furnished to him, however, and he was denied the use of the necessary equipment and implements. The control of the land and crops was assumed by Lafferty, without the tenant's permission, and he conducted the farming and harvesting with day labor.

On September 6, 1938, after two bales of cotton had been picked and ginned, Hammond filed this suit asking damages from Lafferty for the alleged illegal dispossession, and further seeking to recover his interest in the crops produced. A writ of sequestration issued in the proceeding and was executed. The crops and other property seized thereunder were released by the furnishing of bond.

Defendant admits in his answer that he entered into the share contract with plaintiff and that removal from the premises was later ordered, as alleged in the petition. He denies, however, that his actions in taking over the lands and crops constituted an illegal dispossession; and he seeks to justify them on the asserted grounds that Hammond had not fulfilled his obligations and had defaulted under the contract.

After hearing and considering the evidence adduced in the case, the trial judge issued a written opinion in which he held that Lafferty had illegally taken control of the premises, and, consequently, owed to Hammond an accounting of the proceeds and expenses of the crops and also all damages suffered. The opinion states: "This Court holds that the agreement between Hammond and Lafferty was a bilateral contract, therefore neither party thereto had any right of his own volition to declare it a nullity. The controversy should have been settled by mutual agreement or decided by the Court as was ultimately necessary, consequently Lafferty by his action in forcibly taking over the lands and crops and his failure to comply with the terms of the agreement, committed an act that must be construed as illegal."

Defendant, under the judgment, was condemned to pay the sum of $329.17 and all costs, and he appealed.

■■ The verbal contract entered into by the parties was binding on each of them until fulfilled or properly revoked. "Agreements legally entered into have the effect of laws on those who have formed them. They can not be revoked, unless by mutual consent of the parties, or for causes acknowledged by law. They must be performed with good faith." Civil Code, article 1901. Plaintiff agreed to cultivate the lands under the half share system, but it does not appear that he was to receive his portion of the proceeds of the crops in lieu of wages; hence the contract was one of lease. Jones v. Dowling, 12 La.App. 362, 125 So. 478; Busby v. Childress, La.App., 187 So. 104. According to Civil Code, article 2696, a lessor is answerable for the damage and loss sustained by the interruption of the lease when the lessee is unlawfully deprived of the premises.

■ After a close and thorough study of the evidence in the record we have concluded, as did the trial judge, that the several matters complained of by Lafferty did not amount to a breach or default of the contract by Hammond and justify the action taken. Principally among these complaints were Hammond's refusal to employ the method of land preparation which Lafferty recommended, and also the lessee's physical disability resulting from the foot injury.

It is not shown that the parties agreed on any specific or particular type of farming at the time of negotiating the contract. Hammond was accepted merely as a tenant farmer, which vocation he had followed for a number of years. Undoubtedly his method was not in accord with modern farming practices, but, as said in the written opinion of the trial judge, it was not proved to be "entirely, completely and absolutely wrong." The opinion further correctly states, "The method used by Hammond certainly appeared to be archaic and outmoded but if he had been permitted to proceed he could have grown a reasonably satisfactory crop by the procedure contemplated."

Of course, the physical disability of Hammond prevented his performing, after the accident, the actual labor that usually attends the work of tenant farming. The evidence shows, however, that the above mentioned members of his family were competent to and would make and harvest the crops.

■ In computing the amount due to plaintiff, the district judge prepared the following statement, which provides his interpretation of the various transactions, to-wit:

Receipts

| | |
|---|---|
| 12 B/C Loan Value | $476.00 |
| 272 Bu. Corn @ 50¢ bushel | 136.00 |
| 60 Bu. potatoes @ 75¢ per bu. | 45.00 |
| U. S. Government Parity payment allowance @ 2.4 lb. | 157.44 |
| Excess value over loan 12 B/C @ .02 | 125.56 |
| Defendant appears to have received $4.00 per bale in excess of ginning charges 12 B/C $4.00 bale | 48.00 |
| | $988.00 |

Disbursements

| | |
|---|---|
| Expense of making cotton and corn crops | $115.55 |
| Expense picking cotton and board for labor | 104.10 |
| 2 B/C picked before seizure @ $8.00 bale | 16.00 |
| Labor handling cotton @ $2.00 per bale 12 B/C | 24.00 |
| Labor harvesting corn | 20.00 |
| | $279.65 |

| | | |
|---|---|---|
| Total Receipts | $988.00 | |
| Total Disbursements | 279.65 | |
| | $708.35 | |
| One half charged to Lafferty | $354.18 | |
| One half due Hammond | $354.17 | |
| Amount due Hammond carried forward | | 354.17 |
| Less Amount received by Hammond from Lafferty which appears to be | | 75.00 |
| Net amount due Hammond | | $279.17 |
| Damages due Hammond for dispossession, depression, and mental anguish caused by acts of Lafferty | | 50.00 |
| Total amount due Hammond | | $329.17 |

Defense counsel challenges the correctness of the item, "Excess value over loan 12 B/C @ .02—$125.56", and asserts that there is no evidence in the record to support it. His position is correct, and is so admitted by counsel for plaintiff.

He also contends that the disbursements made by Lafferty exceeded those allowed by the trial court. The evidence regarding these items is not very satisfactory and is exceedingly confusing; and in a situation of this kind the findings of the district court are usually not disturbed. However, opposing counsel says that the disbursements plus the cash and supplies advanced by Lafferty amounted to $369.76, or $15.11 more than was deducted, and this figure will be recognized.

■ Complaint is made about the allowance of $50 as damages for dispossession, depression, and mental anguish caused by the acts of Lafferty. In our opinion, this item is amply supported by the pleadings and the evidence.

Counsel for defendant, in his brief, says: "The calculation of the district judge shows that he deducted the entire disbursements allowed by him from the amount he fixed as the total value of the crop instead of from the Hammond one-half share of said crop. This, we submit, is obviously incorrect as under Hammond's share contract the expense of making and harvesting the crop was his expense and should be deducted from his share of the crop rather than from both his and Lafferty's share therein." His opponent agrees with this contention. It is further sustained by the terms of the contract.

By eliminating the challenged item of $125.56, the receipts would total $862.44. The gross proceeds belonging to each party would then be one-half of that amount, or $431.22. Deducting from Hammond's portion the mentioned $369.76, this being the disbursements and cash and supplies advanced, there remains the net amount of $61.46. The adding of $50 damages to the last figure furnishes the sum of $111.46, or the amount for which plaintiff is entitled to judgment.

■ Accordingly, the judgment is amended by reducing plaintiff's award from $329.17 to $111.46, and as amended, it is affirmed. Appellant shall pay the costs of the district court, while the costs of appeal shall be paid by appellee.