Plaintiff agreed with defendant to plant, cultivate and harvest, on the half-share cropper basis, cotton on ten acres of defendant's plantation in Natchitoches Parish. The agreement was for the year 1946 and thereunder, as is the uniform custom in such cases, defendant, in addition to the land, was obligated to provide the necessary tools, equipment, seeds, feed, etc. for plaintiff's use while performing his part of the agreement, and a house in which he could live. It was plaintiff's duty to provide himself subsistence, and to pay for all additional labor needful to the production and harvesting of the crop.
At the time the contract was entered into plaintiff was a minor and not married. His father lived with him.
In the latter part of June the relations of the parties became strained and defendant, over plaintiff's objection, took over the crop and forbade plaintiff and his father to enter upon the land for any purpose. Defendant assigns as the reason for his action in this respect, that plaintiff had moved from the place to a farm three miles away which he had recently purchased and was neglecting the crop; that the grass was about to "take" it and that although urged to clear the crop of the grass and otherwise give it appropriate attention, plaintiff declined to so act.
Plaintiff contends that defendant, after being requested to do so, refused to provide him with the necessary farming implements to properly cultivate the crop and for this reason he was unable to promptly service it, but was at all times willing to do so. He also contends that defendant demanded of him the payment of $35.00 he was due and owing to him on account, and coupled therewith the assurance that the crop would be restored to plaintiff's possession only when that amount was paid. *Page 733 
After the crop had been harvested by defendant and sold, plaintiff instituted this suit to recover one-half of the proceeds of its sale. He alleges that there were eight bales produced and harvested, which, with the seed, had a value of $1,760.00. He, therefore, sued to recover one-half of this amount, or $880.00.
In the alternative, plaintiff alleged that he is entitled to a settlement and an accounting from defendant for the sale of said crop, and for the value of the labor he put forth in planting and cultivating same to the time defendant took it over.
Defendant justifies his action in taking over, completing the cultivation of, gathering and marketing the crop for the reasons above named. He alleged that regardless of his efforts to attain further results, only three bales were produced, the proceeds of which, including the seed, after paying for ginning, bagging and ties, amounted to $592.61, one-half of which being $296.30. He further alleges that this amount, otherwise due to plaintiff, was wholly absorbed by the following charges, to-wit: Expenses of completing the cultivation of the crop, cost of gathering and hauling same to the gin, an account due defendant by plaintiff for advances in cash and otherwise to enable him to plant and cultivate the crop prior to the time of his alleged abandonment thereof. The aggregate of all of these items is $343.44.
The commercial co-partnership of Stille Yarbrough intervened in the suit and prayed, in the event judgment went for plaintiff, that the court recognize a lien in its favor thereon for the amount of an account due them by plaintiff in the sum of $204.36, being for goods, wares and merchandise sold and delivered to plaintiff to enable him to carry out his contract with defendant.
James W. Jones, Jr., attorney for plaintiff, also intervened in the suit and prayed that for contingent compensation for legal services rendered by him to plaintiff herein, a lien and privilege be recognized in his favor on any judgment plaintiff might recover.
[1] Plaintiff's demand was rejected and his suit dismissed. This action automatically rejected the demands of the intervenors, but the judgment is silent as to these. Plaintiff only appealed.
Testimony bearing upon the issues is conflicting but careful study of it leaves us with the clear opinion that defendant was not justified in taking over this young man's crop and denying to him the opportunity to completely perform his part of the contract. We are convinced that the crop of cotton was in reasonably fair condition when taken over by defendant and that its condition then promised a yield in excess of most, if not all, of the crops of defendant's other share croppers. At this time the plants were knee-high and not a great deal of cultivation remained to advance it to the "lay by" period.
The fact that plaintiff had moved to his own property only three miles away, too late to make a crop of cotton that year, did not militate against him giving to the crop on defendant's place the same sort of attention given it before he changed residence; and defendant admits that to that time plaintiff had efficiently attended to the crop. Surely, it would be most unnatural and would evince total lack of self-interest for a farmer to plant and to the last of June cultivate a crop of cotton and then forfeit the labor performed and the expenses incurred by wilfully abandoning the same. Everyone having knowledge of cotton production in this part of the country, well knows that the battle to produce is almost over by July first. From then on, weather conditions with small contribution from man, determine the final result.
It is shown to our satisfaction that defendant, for a reason not definitely disclosed but which appears by implication, delayed supplying plaintiff with indispensable farming implements to work the cotton and this too, after requests had been made to him therefor.
[2] There is considerable significance to defendant's demand for payment of the thirty-five dollars plaintiff admits he owed him. Half-share croppers, as a rule, have no cash and very little credit. They generally have to depend upon the land owner to furnish or arrange for them to otherwise acquire provisions for subsistence and to *Page 734 
supply cash to pay for extra labor in the crop, such as hoe hands. To ask a half-share cropper to pay as much as $35.00 on account in the middle of the farming season is an anomaly. In this instance the end desired was quite obvious. When defendant took charge of the crop and then made the payment of $35.00, a condition precedent to its restoration to plaintiff, he accomplished that which he had in mind from the beginning. He thereby cast upon the impecunious young man an initiative he was wholly unable to meet. Here it is pertinent to ask: If the crop's condition was such that defendant believed he should take it over to save it, why was he willing to return it to plaintiff if the $35.00 were paid?
In a case of this character it is practically impossible for the share cropper to adduce exact proof of the quantity of cotton gathered from the land he worked. Generally, the land owner alone is in a position to supply such proof. The share cropper is almost wholly at his mercy in this respect because he is denied the privilege of going upon the ground to check the cotton as it is being picked, and thereafter it becomes commingled with other cotton and its identity lost.
Plaintiff sought to prove the quantity of cotton that was gathered from the land but this proof lacks sufficient probative weight to predicate a fixing of liability in the amount for which he sued. Four hundred acres of defendant's plantation were planted in cotton in 1946 and one hundred ninety-six bales were gathered therefrom, an average of nearly one-half bale to the acre. The production of some tenants exceeded this average while that of others fell far below it.
Defendant produced and filed three customer's gin receipts that evidence the ginning of three bales of cotton he says were gathered from plaintiff's crop. These three bales weighed 1,515 pounds and sold for $539.32. The seed therefrom, after paying for ginning, bagging and ties, brought $56.45, making a total of $595.77, one-half of which is $297.88.
[3] In view of the testimony we have to accept these figures as being correct and to hold that only three bales were produced on the land tilled by plaintiff.
Defendant testified that to the time he repossessed the land plaintiff was due him on account $144.44, consisting of five different charges, including the aforementioned and discussed $35.00. He also testified that he paid the following amounts to complete the cultivation of the crop and to harvest and market the same, to-wit:
Hoeing $ 60.00 Plowing 5.00 Picking Cotton 120.00 Hauling 9.00 -------- Total $194.00
[4] We have found no Louisiana adjudication in point but under the jurisprudence of several of the other states the land owner who unlawfully repossesses the leased premises and takes over the crop thereon is penalized for so doing by being barred from recovering the amounts advanced by him to complete, harvest and market the crop. The two rules pertinent to this discussion are well expressed in 39 A.L.R., 1358, and read as follows: "If a cropper or tenant abandons his crop, and the landowner enters to cultivate or harvest it, the latter is entitled to recompense himself for the expense of doing this, out of whatever may be due to the former.
* * * * * *
"But the owner is not entitled to such reimbursement if it was because of his fault that the harvesting was not done by the tenant."
Many cases that support each rule are cited.
[5] Surely the land owner who is guilty of wrongfully taking over a crop under the circumstances revealed in this case, and thereby preventing the tenant from completing and harvesting his crop, should in some impressive manner, be penalized for his tortious act. To forfeit the right to recover the expenditures made by him as a follow-up of his said wrongful action, should provide a fair rule and measure in this case. And, so we hold.
[6] Plaintiff challenges the correctness of some of the charges on the account of $144.44, but the proof offered by him is not *Page 735 
conclusive of his contentions. This amount should be deducted from plaintiff's one-half of the net proceeds of the sale of the cotton and seed.
For the reasons herein assigned, the judgment from which appealed, is annulled, avoided and reversed, and there is now judgment in favor of the plaintiff, Oreal Pleasant, and against the defendant, R.C. Anderson, for the sum of $153.44, together with legal interest thereon from judicial demand herein, and for all costs of court.