FRUGÉ, Judge.
This is a suit brought by Joseph E. Fonte-not seeking to have dissolved a farm lease of date of December 7, 1956 and executed by L. P. Benoit, as lessor, to J. E. Fontenot, as lessee, and seeking damages allegedly resulting therefrom.
Plaintiff prays for the dissolution of the lease agreement and resulting damages based on certain alleged acts of the defendant briefly summarized as follows:
That the defendant, Lester P. Benoit on numerous occasions threatened to kill the plaintiff or to do him great bodily harm and that as a result was placed under a $5,-000 peace bond by the district court on December 19, 1958, which bond is still in effect; in accordance with the above lease *816 agreement defendant had placed a pump on the leased property in 1957, and that in December, 1958 he removed said pump (without reason) from the property and had not returned it, and that he refused to return the same though requested by the plaintiff; the defendant removed portions of a levee on the leased premises which transports water for irrigation for the rice crop planted on said leased property and hauled said dirt away; that defendant was to supply fuel for the land leveling and that as a result thereof plaintiff was forced to institute legal action against the defendant in an effort to collect this cost in accordance with the above lease agreement, and in summary plaintiff alleges that the defendant has committed these various acts and others designed to aggravate the plaintiff, cause needless expense, and which in effect would prevent plaintiff from planting a rice crop.
Defendant in his answer substantially denies all of the allegations contained in plaintiffs petition, save and except that pertaining to the $5,000 peace bond, which is admitted.
The leased premises contain 140 acres, more or less and there are approximately 128 acres of that which are subject to being cultivated and planted in rice.
The provisions of this written farm lease are briefly stated as follows:
1 — Term of five (5) years, to commence on December 1, 1956, and to terminate on December 1, 1961.
2 — Lessee to pay lessor one-fifth share of the rice crop as land rent.
3 — Lessee to deliver rice to the dryer, and to pay all drying, if necessary.
4 — Lessor to furnish water pump and Lessee to pay all operating expenses, including operating pump.
5 — Lessee to maintain pump furnished by Lessor in working order.
6 — -Lessee to pump his own water.
7 — Lessee to furnish equipment and work for land levelling and lessor to furnish fuel for said land levelling.
8 — Lessee to cooperate with the acreage control.
The record reveals that the plaintiff, as a result of the acreage control has been allowed to plant only 52 acres each year, which he did in the years 1957 and 1958. In 1957 plaintiff land levelled a portion of the leased premises and defendant without question paid for the fuel all in accordance with the contract. Then the trouble began in the year 1958. Plaintiff again land levelled a portion of the leased premises and presented defendant with a statement for the cost of the fuel in the amount of $96 which amount defendant refused to pay, as a result of which plaintiff filed suit on the Clerk’s docket in June, 1958 against the defendant for the amount of $96. On June 18, 1958, the defendant answered the suit and denied owing the $96 and reconvened for $99 for the loss of a portion of a live oak tree located on the leased premises caused by a fire allegedly set by the plaintiff J. E. Fontenot in order to burn a dead animal. Trial was had on this matter on December 3, 1958. The trial judge states that both parties were not represented by the same attorneys representing the respective parties in this particular litigation. The trial judge states that he was advised in open court that the matter was compromised and a written minute entry to that effect was made. The evidence in the record reveals that Mr. Benoit, the defendant here paid to Mr. Fontenot, the plaintiff here, 50% of that claim to settle the dispute. There seems to be no mention made at the time of the dismissal of Mr. Benoit’s claim for damages for the tree damage.
Our learned brother below, in discussing this case, but particularly his evaluation of the evidence, is so clear, concise and reflecting a correct summary thereof that we will avail ourselves of the privilege of quoting at length from his judgment, to-wit:
*817 “Shortly after the December 3, 1958 settlement, Mr. Benoit sent the Justice of the Peace, Mr. Pousson, to call on Mr. Fontenot and direct him to move all of his tools and farm implements from the pasture reserved by Mr. Benoit. Mr. Fontenot complied. About this same time Mr. Fontenot was notified by Mr. Pousson and other mutual friends of Mr. Benoit and Mr. Fonte-not that Mr. Benoit might kill Mr. Fontenot. Mr. Benoit made it clear to their mutual friends that he no longer wanted Mr. Fontenot on the tract. As a result of these threats Mr. Fontenot gave an affidavit to this court seeking to place Mr. Benoit under a peace bond. A hearing was set in order to determine the merits of the case and on December 19, 1958, after hearing the testimony of numerous witnesses to the effect that Mr. Benoit had threatened to take the life of Mr. Fontenot and the fact that Mr. Fontenot was afraid of Mr. Benoit, this court ordered Mr. Benoit to make a Peace Bond in the sum of $5,000.00. Mr. Benoit complied and this Peace Bond is still in effect.
“After the December 3, 1958 settlement of their first suit and prior to the peace bond hearing, Mr. Benoit removed the [centrifugal] pump which had been successfully used by Mr. Fon-tenot during the 1957 and 1958 crop years. In removing the pump Mr. Benoit also did away with the foundation which had been erected by Mr. Fontenot to receive the [centrifugal] pump. The [centrifugal] pump was in operating order and Mr. Benoit could give no reason at all for having removed it. Mr. Benoit testified that he did state to mutual friends of his and Mr. Fontenot’s that he intended to furnish Mr. Fontenot with a “pitcher pump” in order to comply with his obligation to furnish a pump. Mr. Benoit testified that a “pitcher pump” was all Mr. Fontenot deserved. It is obvious that Mr. Benoit was determined to cause all of the difficulty he could to his lessee, Mr. Fontenot.
“However, to defend this case, he states that in fact he intended to furnish Mr. Fontenot a Lo-Lift pump to replace the [centrifugal] pump. He points to the lease itself which reads: ‘Tenant to use L.L. pump which will be put in order by landlord. Tenant then to maintain pump in working order.’ It is contended ‘L.L.’ that stands for Lo-Lift and that Mr. Benoit was attempting to comply with the lease in furnishing this Lo-Lift pump. This interpretation is not accepted as valid by this court for the reason that the lease uses the same initials ‘L.L.’ on the same page and only a few sentences above in an obvious reference to landlord. The lease there reads: ‘L.L.’ reserves use of pasture for own use.’ This certainly refers to the landlord and not to the Lo-Lift pump. That this interpretation is correct is clearly shown by Mr. Benoit’s counsel when he questioned Mr. Fontenot by deposition at line 6 of page 31 of Mr. Fontenot’s deposition. His question was as follows when referring to the lease: ‘The exact language was that the tenant to use landlord’s pump which will be put in order by landlord and tenant then to maintain the pump in working order?’
“Additional facts in connection with the return of the pump are as follows: On April 2, 1959 Mr. Fontenot’s counsel mailed by certified mail a demand to Mr. Benoit asking him to return the pump within five days after receipt of the letter and informing him that unless the pump was returned within that time he intended to sue for cancellation of the lease and for recovery of lost profits. The next day Mr. Benoit’s counsel replied stating: ‘The pump in question was removed for repairs, has been repaired and will be returned when Mr. Fontenot returns the parts of the power take-off which he removed from said premises and which he has *818 been requested to return many times.’ Mr. Fontenot denied notice of any previous requests to return the power take-off but did on the Sth of April, 1959 deliver the power take-off to defendant’s attorney. On April 7, 1959 Mr. Fontenot’s attorney telephoned Mr. Benoit’s attorney demanding that the pump be returned. Mr. Benoit’s attorney stated that the pump would not be returned until a vacuum hose was returned by Mr. Fontenot. Mr. Fonte-not contends that he furnished the vacuum hose necessary to prime the [centrifugal] pump at a cost to him of less than $2.50. Mr. Benoit contends that he furnished the vacuum hose. At any rate, it is a fact admitted by all parties that neither the power take-off nor the vacuum hose are necessary to the operation of a Lo-Lift pump. There is no connection between Mr. Benoit’s refusal to deliver the Lo-Lift pump and his demands for the power take-off and vacuum hose.
“This suit was filed on April 10, 1959 and about three to five days later Mr. Benoit delivered and set the Lo-Lift Pump on the leased premises.
“According to the Exhibit Marked P-D-l the Lo-Lift pump was repaired by the Lo-Lift Pump Company without a guarantee on the job. The Lo-Lift pump which Mr. Benoit had repaired had been used by Mr. Benoit prior to the time when Mr. Fontenot leased this property. However, at the time Mr. Fontenot took over the lease, Mr. Benoit furnished the [centrifugal] pump and placed this Lo-Lift pump near the oak tree, which is the only tree on this 140 acre tract. Sometime early in 1959 Mr. Benoit picked up this Lo-Lift pump and brought it to the Lo-Lift Factory for repairs. The fact that Mr. Benoit later furnished the Lo-Lift pump repaired in such a way that there was ‘no guarantee’ is further indication of Mr. Benoit’s expressed desire to drive off his tenant Mr. Fontenot.
“It is Mr. Benoit’s contention that the Lo-Lift pump was furnished within ample time for Mr. Fontenot to make his 1959 crop. It is pointed out that in 1957 when Mr. Fontenot planted the same acres that he intended to plant for this 1959 crop, and planted them in water as he intended to plant this 1959 crop, that Mr. Fontenot planted in the month of May. Most of the other farmers who testified concerning water planting also testified that late April or May were the proper months for water planting. It is therefore argued that Mr. Benoit’s delay in furnishing the pump in nowise interferred with Mr. Fontenot’s proper use of the land. However, the testimony in this case is to the effect that all of this land was properly prepared for water planting to be commenced by April 5th. The evidence preponderates to the effect that unless the plaintiff could start watering his land prior to the time that this suit was filed, he would have to re-plow, redisc and recultivate his land. This would take several weeks of work. It is also to be noted that it takes several days of constant pumping to flood the land so that the water planting can be done.
“For these reasons this court is of the opinion that Mr. Fontenot needed the pump for the proper cultivation of his land prior to the date suit was filed; that Mr. Benoit had no reason whatever to remove the properly functioning [centrifugal] pump at the end of the 1958 crop year except his desire to break his lease agreement with Mr. Fontenot; that his refusal to comply with the demand letter of April 2, 1959 to return a pump within five days from the date of receipt of the letter, was, (when considered along with the fact that Mr. Benoit had to be placed under a peace bond for threatening Mr. Fontenot’s life and had to be sued to get compliance with the lease on a prior occasion, and the other facts and cir *819 cumstances proved in this case) a serious disturbance of the peaceable possession which Mr. Benoit owed to Mr. Fontenot it follows that these serious disturbances entitle Mr. Fontenot to the dissolution of the lease.”
We have no difficulty in concluding that there appears no manifest error on the part of trial judge in his finding of the facts and his application of the law thereto.
Article 2729 of our LSA-Civil Code provides that “the neglect of the lessor or lessee to fulfill his engagements, may also give cause for a dissolution of the lease * * Article 2692 provides that the lessor is under an obligation to maintain the lessee in peaceable possession of the leased premises. Our courts have been reluctant to abrogate leases except in extreme cases. Kling v. Maloney, 7 La.App. 751. In Veazie v. Rogers, La.App., 6 So.2d 170, 173, the Court stated: "The rule that physical disturbance of ia tenant in the peaceable possession of leased premises should appear to be not alone of a serious nature, but of equal certainty, in order to warrant an abrogation of the lease”. (Emphasis supplied.)
As correctly stated by the trial judge, the facts in both of these cases do not approach the degree of seriousness nor the degree of proof and certainty which was established in the trial of the instant case and necessarily it follows that these cases are distinguished for that reason. For the same reasons the cases of United Shoe Stores Co. v. Burt, La.App., 142 So. 370 and Boulevard Investment Corporation v. Boulmay, La.App., 79 So.2d 917, may also be distinguished.
Inasmuch as we have determined, the defendant committed serious breaches of the lease agreement and that the contract of lease must be dissolved, we must now consider the remaining two questions which are: (1) Plaintiff’s rights to damages and (2) Defendant’s reconventional demand for alleged damages caused by Mr. Fontenot (plaintiff) to the live oak tree owned by Mr. Benoit (defendant).
In discussing this phase of the case, we are again taking the liberty of quoting from the trial judge because he has so ably disposed of the issues and in such complete satisfaction to our views that we are adopting his reasons for our own:
“Plaintiff bases his claim for damages on R.S. 9:3203 which provide that: ‘Any lessor of property to be cultivated who fails to permit the lessee to occupy or cultivate the property leased is liable to the lessee in an amount equal to the market value of the average crop that could have been grown on the land or on like land located in the immediate vicinity.’
“The cases cited in defendant’s original brief do not deal with this statute which was originally Act No. 250 of 1924 and, therefore, the cited cases are inapposite. The cited cases were Bennett v. Weinberger, 160 La. 1001, 107 So. 780; Dehan v. Youree, 161 La. 806, 109 So. 498; Cole v. Murray, 7 La.App. 4; Gebelin v. Hamilton, 18 La.Ann. 646; Crow v. Manning, 14 So. 122, 45 La.Ann. 1221; Guidry & Swayne v. Miller, 47 So.2d 721, 217 La. 935; W[estern] U[nion] Tel. Co. v. R. J. Jones and Sons [5 Cir.], 211 F.2d 479.
“Defendant also cited in his original brief the case of Sheeks v. McCain-Richards, et al [226 La. 528], 76 So.2d 892 and contended that the Sheeks case is ‘on all fours with the instant case.’ At no point in the Sheeks case did the Supreme Court consider the provisions of L.R.S. 9:3203. The reason is undoubtedly that the Sheeks case involved a contract to buy and sell a tract of land rather than a contract of lease. The suit was one for damages for breach of contract rather than to cancel a lease and obtain damages therefor. The Louisiana Supreme Court held in the Sheeks case that in an action by a vendee against a vendor for breach of a contract for sale of realty, *820 the lost profits vendee would have realized had the vendor not breached the contract is too uncertain to form a basis for damages.
“ * * * Defendant urges that L. R.S. 9:3203 is not applicable for the reason that the plaintiff failed to specifically allege and prove that Mr. Benoit, the lessor, failed to permit the ' lessee to occupy or cultivate the property leased. For the reasons cited by this court hereinabove wherein it was concluded that the lease must be dissolved, this court is of the opinion that the lessor (Mr. Benoit) failed to permit the lessee (Mr. Fontenot) to cultivate the property leased. Therefore, Mr. Fontenot, the lessee, is entitled to ‘an amount equal to the market value of the average crop that could have been grown on the land or on like land located in the immediate vicinity.’
“The cases of Young v. Gay, 41 La. Ann. 758, [6 So. 608;] Pleasant v. Anderson, [La.App.,] 36 So.2d 731; Jones v. Dowling, [12 La.App. 362,] 125 So. 478, Hammond v. Lafferty, [La.App.,] 192 So. 746, were apparently cited by the defendant for the purpose of showing that this statute had been construed to allow as damages only that portion of the ‘Average crop’ which belonged to the tenant, after deducting the expenses for making the crop. In this case that is all that the plaintiff is requesting. The testimony showed that in 1958 the plaintiff netted $3,273.71 for his share of the rice crop. Other witnesses verified that his crop yield for the crop year 1958 was an average yield. For the crop year 1957 plaintiff had a net loss for the reason that an unprecedented storm,- Hurricane Audrey by name, destroyed the rice crops in that area. That crop year cannot be considered in determining an average yield.
“Plaintiff contends that since the lease was valid for crop years 1959, 1960 and 1961, plaintiff is entitled to three times $3,273.71.
“This court does not interpret the statute in that way. The statute (R.S. 9:3203) is punitive in nature and must be strictly construed. The statute does not provide that the damages shall be equal to the market value of the average crop that would be harvested for the duration of the lease. It only provides- for an amount equal to the market value of ‘the average crop.’ In this case that is held to be $3,273.71 which is the amount of damages to which plaintiff is entitled.
“As to the reconventional demand for damages to the liveoak tree in the amount of $1,950.00, it is this Court’s opinion that that demand cannot be allowed in this suit. The same damages were the subject of a recon-ventional demand filed by Mr. Lester P. Benoit is suit No. C-189-58, a suit between these same two parties which was referred to earlier in this opinion. In that case Mr. Benoit contended that his liveoak tree was damaged to the extent of $99.00. The case came up for trial on December 3, 1958 and on December 3, 1958, the same day, Mr. Sloan prepared and dated his estimate of the damages to the liveoak tree as $1,950.00. See Exhibit D-9 in the record of this suit. The case No. C-189-58 did not go to trial, although the litigating parties were both present in court at the time the case was called. Mr. Benoit’s counsel was not present in court, however, Mr. Fontenot’s attorney was present. When the case was called Mr. Arnette, who then represented Mr. Fontenot, announced that the case was being compromised and this court asked him to dictate into the Minutes of Court the disposition of the suit. This notation was placed in the Minutes: ‘On motion of Hon. W. G. Arnett, this case is dismissed with prejudice at plaintiff’s costs, by virtue of a compromise.’
*821 “It is noted that there is no special reference in this dismissal to the claim of Mr. Benoit. Therefore, his claim for $99.00 in damages in suit No. C-189-58 is still pending. Since that claim is still pending it cannot be the subject of a reconventional demand in this suit.”
For the above and foregoing reasons the judgment of the district court is
Affirmed.