ROBERT P. JACKSON, Judge Pro Tern.
This appeal arises out of an automobile accident that occurred on June 21, 1976. A *359 .pick-up truck operated by Louis Neal Grant collided head-on with an automobile driven by Edward L. Youngblood. Two of the passengers in Youngblood’s car were Terry Dale Cupit, a minor, and his mother, Charlotte Ann Buckles Youngblood. Terry Dale Cupit was injured and his mother killed. Daniel Cupit, Sr., individually and as provisional tutor of the three minor children, Daniel Cupit, Terry Dale Cupit and Sherry Gayle Cupit, filed suit. Recovery is sought for the general and specific damages sustained by Terry Dale and also for the wrongful death of the mother of the three minor Cupit Children.
Made defendants in this suit are Louis Neal Grant, Louisiana Delta Plantation, Morrison Grain Company, Inc. and Morrison-Quirk Grain Corporation. The Aetna Casualty and Surety Company and Edward Youngblood, Sr. Louisiana Delta, Morrison Grain and Morrison-Quirk are alleged employers of Grant and/or engaged in a joint venture with Grant. Aetna was sued as the insurer of all the above defendants except for Edward Youngblood.
The case was initially tried in March, 1982 before a twelve (12) man jury. Morrison Grain Company, Inc., Morrison-Quirk Grain Corporation, Louisiana Delta Plantation and The Aetna Casualty and Surety Company were granted a directed verdict. The trial judge held that an employment relationship did not exist between these three defendants and Grant. The jury found Grant liable for plaintiffs’ injuries and returned a verdict of $300,000.00 for the general damages suffered by Terry Dale Cupit and of $15,000.00 per child for the wrongful death of their mother. The parties stipulated to Terry Dale’s medical damages.
Plaintiffs appealed the amount of the awards and the directed verdict. This Court ruled on December 22, 1982 that granting the directed verdict was error and increased the award of $15,000.00 per child to $30,000 for the wrongful death of their mother. Cupit v. Grant, et al, 425 So.2d 847 (La.App. 3rd Cir.1982).
The case was then remanded to the trial court for a new trial between plaintiffs and Louisiana Delta, Morrison Grain, Morrison-Quirk and Aetna as defendants. The trial court, by granting a Motion in Limine filed by defendants, restricted the new trial to the issues of insurance coverage and the legal relationship between defendants and Louis Neal Grant. Plaintiffs waived their right to trial by jury. The trial judge ruled in favor of defendants holding that the relationship between Grant and defendants, Louisiana Delta, Morrison Grain, and Morrison-Quirk, was one of lessee — lessor, not of employment. If there is no employment relationship, then the issue of insurance coverage is not reached. Judgment was signed January 25,1985, which judgment is now appealed.
A personal injury suit was also brought by plaintiffs in the United States District Court for the Western District of Louisiana. Aetna Casualty was not named as defendant. In that action, defendants Morrison Grain and Morrison-Quirk, d/b/a Louisiana Delta Plantation, moved for Summary Judgment as to the employment relationship. That motion was granted, the Federal District Court finding that the relationship was one of lessor — lessee, not employer — employee. See Youngblood v. Morrison Grain Company, Inc., 467 F.Supp. 758 (1978). The Fifth Circuit upheld. Youngblood v. Morrison Grain Company, 591 F.2d 1207 (1979). An Exception of Res Judicata in the case at bar was denied on the basis that a named defendant in the State suit, Aetna Casualty, was not so named in the Federal action.
The issue here, therefore, is one encountered at least twice in prior judicial rulings. Was Grant at the time of the accident an employee of Morrison Grain Company and Morrison-Quirk Grain Corporation, d/b/a Louisiana Delta Plantation, so as to render these three defendants vicariously liable for the injuries suffered by plaintiffs? This Court finds that there was no such relationship.
In an excellent opinion Judge Tom Stagg of the United States Western District of *360 Louisiana addressed the employment issue and ruled against plaintiffs in Youngblood, supra:
“Defendant Louis Neal Grant farms a large tract of land in Catahoula Parish leased from Louisiana Delta Plantation (Delta), a joint venture between defendants Morrison Grain Company, Inc. and Morrison-Quirk Grain Corporation. While running errands related to his farming operation in June 1976, Grant’s pickup truck collided with an oncoming car. Plaintiffs represent the occupants of the oncoming car killed or injured in the collision.
“This action is presently before the court on the motion of the defendant corporations for summary judgment on the ground that they are not legally responsible for the torts of Grant, their lessee. Finding that the doctrine of re-spondeat superior in Louisiana is based on the right to control the conduct of the tortfeasor, and that the defendant corporations lacked any such right with respect to Grant, the motion for summary judgment must be GRANTED.
Is there a genuine issue as to any material fact?
“Plaintiffs contend that summary judgment is inappropriate because there is a dispute over whether Grant was an employee or a mere lessee. Plaintiffs misconceive the function of summary judgment. If there is no dispute as to the factual attributes of the relationship between Grant and the defendant corporations, or at least as to the material attributes, then the fact that the parties disagree over the legal effect of these attributes does not require a trial.
“Plaintiffs correctly maintain that the key to determining whether one party to a relationship is an employee is the extent of the other party’s right to control the conduct of the first. Hickman v. Southern Pacific Transport Company, 262 La. 102, 262 So.2d 385, 391 (1972). In this case, unlike most business relationships, the entirety of defendants’ right to control Grant’s conduct is evidenced by a writing-the lease executed between Grant and Louisiana Delta Plantation on January 1,1976. It is undisputed that the right to control contained in the lease is greater than the control actually exercised by defendants. Thus, the lease presents the facts in the light most favorable to the parties opposing the motion.
“The lease recites in detail numerous farming practices which Grant must carry out. Should he fail to comply, the lessor reserves the right to enter the premises and take the necessary steps at Grant’s expense. Although the lease allows Grant to farm other Land,[1] it requires him to segregate the crops of the other lands and their proceeds.
“The provision in the lease that is most important here is paragraph 16:
‘Lessor retains full supervision and control of the manner and time for plowing, planting, cultivation, fertilizing, poisoning and harvesting of all crops grown, and the failure of Lessee to properly control noxious weeds or to submit to Lessor’s supervision and control of the crops grown shall ipso facto terminate this lease and relieve Lessor of any responsibility or liability to Lessee.
It is agreed and understood that nothing contained herein shall have the effect of making lessee an agent or employee of Lessor and nothing herein shall be interpreted to permit Lessor to supervise either Lessee’s employees, servants or Lessee in respect to the time and manner in which Lessee’s machinery or labor is operated or their duties performed.’
“The lessor has the right to complete control over the selection of farming practices but no right to control the time or physical conduct of those who implement these practices. The lease gives the lessor no control whatsoever over *361 Grant himself. He could fulfill all the terms of the contract without ever setting foot in Louisiana. In fact, Grant did employ others to farm Delta’s land, while devoting an indeterminate amount of time to farming land belonging to himself and others.
“While the depositions and answers to interrogatories might be construed to present a question as to the extent of control over Grant actually exercised by the defendants, they raise no questions concerning the right to control. Accordingly, the court must proceed to the second state of the inquiry.
Are defendants entitled to judgment as a matter of law?
"No reported decisions have been found dealing with the liability of a farm owner for the physical torts of a tenant farmer. However, decisions analyzing this relationship in other contexts and decisions distinguishing between master-servant and other legal relationships are instructive.
“In other contexts, Louisiana courts have repeatedly held that the key to determining whether a sharecropper is a lessee or an employee is whether the parties intended that the share of the crops be taken in lieu of wages. Hammond v. Lafferty, 192 So. 746, 748 (La. App.2d Cir.1939); Busby v. Childress, 187 So. 104, 107 (La.App.2d Cir.1938); Jones v. Dowling, 12 La.App. 362, 125 So. 478, 479 (2d Cir.1929). The sharecropper is presumed to be a lessee unless it is shown that the share was in lieu of wages, Roberie v. Safeco Insurance Co. of America, 282 So.2d 834, 836 (La.App. 1st Cir.1973), and the showing must be based on the language of the contract. Louisiana Farm Bureau Cotton Growers Co-operative Association v. Bannister, 161 La. 957, 109 So. 776 (1926). See also Bolin Farms v. American Cotton Shippers, 370 F.Supp. 1353, 1371 (W.D. La.1974). In all of the cases cited above, the relationship was determined to be one of lessor-lessee rather than master-servant.
“Federal courts have arrived at the same conclusion with regard to sharecroppers when addressing the question whether the share of the crop given to the lessor constituted rent or unrelated business income. Tatum v. Commissioner of Internal Revenue, 400 F.2d 242, 244, 246 n. 12 (5th Cir.1968); U.S. v. Myra Foundation, 382 F.2d 107 (8th Cir. 1967). These cases involved an arrangement very similar to the lease in the case sub judice including the use of a farm manager who
advised the tenants as to crops to be planted, seed, weed spray and fertilizer to be used and other matters. Decisions were made by mutual agreement between the tenant and farm manager. The tenant furnished all the machinery and the labor in the production of the crops and generally made decisions as to the day-to-day operation of the farm. 382 F.2d at 111.
In each case the court decided that the lease created a landlord-tenant relationship.
“Louisiana courts have confronted claims against landowners for the physical torts of their lessees in a non-agricultural setting and have uniformly found no liability. Meche v. Travelers Insurance Company, 222 So.2d 339 (La. App. 1st Cir.1969). Sam v. Theriot, 49 So.2d 484 (La.App. 1st Cir.1950).
“The law is clearer on the general distinction between the master-servant relationship and other legal relationships. In Blanchard v. Ogima, 253 La. 34, 215 So.2d 902, 905-06 (La.1968), the Louisiana Supreme Court held that the key to whether one party is an employee for purposes of respondeat superior (an Article 2320 servant) is the right of control of the time and physical activities in the other party. The court further stated:
‘A servant is one who offers his services for a price. He is an integral part of his employer’s business and must submit to the control of his physical conduct as well as of his time.’
The general common law rule is that the right to control the details of his physical *362 movements’ is necessary to make the principal liable for the physical torts of a non-servant agent. Restatement of the Law of Agency, Second Section at 549. See Scoggins v. Smith, 342 So.2d 1130, 1132 (La.App. 1st Cir.1977).
“In Goetschel v. Glassell-Wilson Company, 13 La.App. 424, 127 So. 81 (2d Cir.1930), the court listed several factors to be considered in determining whether one is an employee or an independent contractor: (1) who furnished the tools used on the job?; (2) how was the party paid and by whom?; (3) who bears the risk of business loss?; (4) who profits from those working under the supervision of the party?; and (5) has there ever been a clear employer-employee relationship between the parties concerning the same job? See also Hickman v. Southern Pacific Transport Company, 262 La. 102, 262 So.2d 385 (1972). Applied to the case before this court, all but the last factor counsel against the existence of an employment relationship. Even though Grant was previously employed by the defendants, there were such significant changes in Grant’s circumstances — his move to Louisiana, purchase of other land and his own equipment — that the prior employment is of little significance.
“Considering the undisputed facts of this case and the terms of the lease, the court must conclude that Delta did not exercise or have the right to exercise sufficient control over the person of Louis Grant to render him its employee. The deep pocket often produced by the doctrine of respondeat superior is not an end in itself. It is merely a beneficial side effect of the principle that one is responsible for the acts of those whom he controls.[2] Thus, when a business chooses an alternative organizational structure and relinquishes certain control over the organization, it should not be viewed as though it were attempting to evade an overriding principle of law.
“This is not to say that businesses may escape liability by interposing an apparently independent agent to act as a conduit for orders to those actually doing the work. If the business has the actual right to control the agent’s employees it will be vicariously liable for their torts. Cf. Pitts v. Shell Oil Company, 463 F.2d 331 (5th Cir.1972). In any eyent, Grant was not a mere conduit. Grant’s employees were not subject to Delta’s control either actually or legally.
“Accordingly, ¡finding that Louisiana Delta Plantation was not the employer of Louis Neal Grant at the time of the accident, the motion for summary judgment must be GRANTED”.
A review of the record by this Court demonstrates that the lower court was correct in finding that there was no employment relationship between Grant and the above named defendants.
AFFIRMED.

. In addition to Louisiana Delta Plantation’s land, Grant owned. 603 Arcres which he farmed along with other tracts leased from third parties.

. This is particularly clear in Louisiana because Civil Code Art. 2320 states: responsibility only attaches, when the masters or employers ... might have prevented the act which caused the damage, and have not done it. The Jurisprudential repeal of this particulary harsh provision does not change the basic policy of the statute that control is the key. Blanchard v. Ogima, 253 La. 34, 215 So.2d 902 (1968).