SCHMUDLACH, Respondent, vs. DANNER, Appellant.

*February 8—March 8, 1921.*

*Animals: Trespass by cattle: Failure to maintain lawful fence: Wilful trespass.*

1. Under sec. 1391, Stats., barring landowners who do not maintain partition fences from recovering for trespasses by animals of adjoining landowners, the obligation rested on the plaintiff landowner, if he desired to recover damages for the straying of defendant's cattle from the latter's adjoining farm upon plaintiff's farm, to see to it that a proper partition fence was built; and it was therefore immaterial whether the proceedings of fence viewers to establish a partition fence were taken according to the statute or whether the blame for failure to have the fence completed should be placed upon plaintiff or defendant or both.

2. The common-law absolute liability of the owner of domestic cattle for damage done by his default in failing to so care for them that they do not stray from his lands to those of another is still the law of this state except as modified by statute.

3. The provisions of sec. 1391 apply only to such trespasses as are occasioned by the natural propensity of the animals themselves, and not to a positive intentional act of the owner or keeper of such animals whereby the trespass is occasioned; and as to such wilful trespasses the absolute common-law liability of owners for trespasses by their cattle is still in force.

4. To constitute wilful trespass as distinguished from the trespass contemplated by sec. 1391, Stats., there must be more than a mere turning of cattle loose from the owner's barnyard onto his own fields, even if he has reason to believe that if left to themselves they will probably wander into the unfenced field of his neighbor; and in an action for such a trespass on a clover field, where there was a gap in the partition fence, an instruction that there would be a wilful trespass if defendant "knew that his cattle had discovered the clover field and were certain to return if they were given the chance, to turn them out of his barnyard towards the gap and knowingly allow them to walk direct to the clover field," was too broad.

APPEAL from a judgment of the circuit court for Waushara county: BYRON B. PARK, Circuit Judge. *Reversed.*

The plaintiff and defendant own adjoining farms divided

by a town line.  They discussed the further maintaining of a partition fence.  The defendant then built a portion of the fence from the center to the south except a part cut off by a highway crossing near the corner.  The plaintiff not completing the other portion, the defendant called for fence viewers under the statute.  They met and decided that the plaintiff should build the north forty rods and the defendant the south forty rods.  The plaintiff, being dissatisfied with the determination of the fence viewers, left a gap of about twenty-four feet between the center of the line and the south end of his fence.  Just opposite this gap was plaintiff's clover field, the second crop on which, during a summer following the building of the fence, was destroyed by cattle.

The plaintiff commenced this action in trespass for such damages.  The defendant asserted as a defense that the plaintiff had failed to comply with the orders of the fence viewers and had failed to erect and maintain the proper fence between the two farms, and that he was precluded by statute from recovering damages for any such trespass.

At the trial the plaintiff amended his complaint by alleging that the trespass was a wilful one.  He offered the evidence of witnesses which he claimed tended to show that the defendant intentionally drove his cattle through the gap and onto the clover field.

By special verdict the jury found that the defendant did wilfully trespass upon the plaintiff's clover field and did damage to the extent of $30.  They also found that the fence built by the plaintiff and maintained by him up to the time of the alleged trespass was not a legal fence.

The following is the substance of the testimony of the witnesses relied upon by plaintiff as showing a wilful trespass:

Fred Buschke testified that he saw defendant drive his cattle to the clover field.  Saw him drive them through the gap twice; they were going towards the gap and went through the gap.  "I seen them go through the gap; they

went out of sight so I suppose they went on there. I never saw them in the clover field, however."

August Katz testified that he was with Buschke on one such occasion and saw the defendant as he came towards the clover field, and when defendant saw them he ducked between the bushes and the cattle went straight for the gap and out of sight. "They must have gone through the gap; they couldn't have gone elsewhere because I could have seen them if they came back." "I saw defendant drive the cattle towards that gap." "When defendant saw us he just walked behind the bushes. The cattle kept right on going. I suppose they went on the clover field." "They must have went through the gap because we could see on the east side of the fence and couldn't see on the north side. If they had come out on the east side we would have seen them; there is a strip of woods on the north side of the clover field so that we couldn't see them there."

Another witness testifies to have seen, on some other occasion, the defendant's cattle in the clover field, but there is no testimony tending to show that the defendant was then present or knew of it.

The judge charged the jury with reference to the wilful trespass as follows:

"There is no question between plaintiff and defendant but that the defendant's cattle did at times get upon the plaintiff's clover field. This question goes farther than merely to ask whether the cattle got on the plaintiff's pasture. The real inquiry is whether the defendant wilfully brought it about that his cattle pastured on the plaintiff's field. If, for instance, the defendant did in fact drive his cattle through the gap, then there would be no question but that the defendant would be guilty of a wilful trespass.

"The defendant had a right to turn his cattle into any of his own fields; and the mere fact that they strayed from his own fields through a gap or a defective place in the line fence to those of the plaintiff—even though the defendant knew the fences were down—would not be a wilful trespass. It would be a wilful trespass if the defendant purposely, in

any wise or in any manner, drove or guided his cattle to the gap in the fence that they might get through the gap and pasture on plaintiff's pasture. *It would also be a wilful trespass if he knew that his cattle had discovered the clover field, and were certain to return if they were given the chance, to turn them out of his barnyard towards the gap and knowingly allow them to walk direct to the clover field.*

"The defendant of course had the right to drive his cattle from his barnyard to any portion of his premises and pasture them there, and the defendant was under no legal obligation to telephone the plaintiff that cattle were getting on the clover field."

The defendant moved to change the answer of the verdict whereby the jury found that there had been such wilful trespass, and also for judgment notwithstanding the verdict, or that the same should be set aside and a new trial granted. The court granted judgment for the plaintiff for the amount of the damages, and from such judgment the defendant has appealed.

For the appellant there was a brief by *Gad Jones* and *Philip Lehner,* both of Princeton, and oral argument by *Mr. Lehner.*

*E. F. Kileen* of Wautoma, for the respondent.

Eschweiler, J. Sec. 1391, Stats., provides for the building of partition fences and also provides that "owners of lands who do not maintain and keep in repair lawful partition fences shall not be entitled to recover any damages whatever for trespasses by the animals of owners of any adjoining lands with whom partition fences might have been maintained if such lands had been inclosed."

The jury found, and there can be no dispute under the testimony, that there was not a proper statutory partition fence between these two farms. The obligation rested on the plaintiff, if he desired to recover damages for the straying of defendant's cattle from the adjoining farm upon plaintiff's own farm, to see to it that a proper partition fence was

Schmudlach v. Danner, 173 Wis. 513.

built and maintained.  It is therefore entirely immaterial whether or not the proceedings of the fence viewers were taken according to the statute or not.  Whether the blame for the failure to have the entire fence completed should be placed upon plaintiff ·or defendant, or both, is immaterial under the plain reading of the statute.  There being no such fence at the time of the injury to plaintiff's clover field, he is barred by the statute from recovering damages occasioned by the mere straying of the adjoining owner's cattle upon his farm.

The plaintiff, however, asserts that this statutory bar to the right to recover does not apply in the case of· a wilful, intentional trespass by the owner of the cattle driving them upon another's land, and the defendant the contrary.

The common-law absolute liability of the owner of such domestic cattle for damage done by his default in so caring for them that they stray from his lands to those of another .is still the law of this state except as modified by statute. *Metropolitan C. Ins. Co. v. Clark,* 145 Wis. 181, 183, 129 N. W. 1065.

It is well recognized, however, that provisions in a fence statute such as we have here are intended to apply only to such trespasses as are occasioned by the natural propensity of the animals themselves and not to a positive, intentional act of the owner or keeper of such animals whereby the trespass is occasioned.  As to such wilful trespasses the absolute liability of the common law making the owners of such cattle liable for consequent damage must be held to be still in force. *Light v. U. S.* 220 U. S. 523, 31 Sup. Ct. 485; *Mower v. Olsen,* 49 Utah, 373, 164 Pac. 482; *Vanderford v. Wagner,* 24 New Mex. 467, 174 Pac. 426; *Frostenson v. Marshall,* 25 New Mex. 215, 180 Pac. 287; *Harrison v. Adamson,* 76 Iowa, 337, 41 N. W. 34.

There must, however, be more than a mere turning of cattle loose from the defendant's own barnyard onto his own fields, though he has reasonable probability for believing

that if left to themselves they will wander from his into the field of his neighbor, in order to justify a finding of such wilful trespass as will support a recovery for the consequent damages, where, as here, there has not been maintained a lawful partition fence. The italicised portion of the charge to the jury quoted in the statement of facts therefore stated the rule too broadly.

We have examined the record in this case and are satisfied that the evidence is not sufficient to sustain the finding that there was a wilful and intentional trespass by defendant in driving his cattle through the gap and upon the plaintiff's clover field. For that reason we think the motion of the defendant for a directed verdict or the subsequent motion for judgment notwithstanding the verdict should have been granted, either of which would have resulted in a dismissal of the complaint upon the merits. We are satisfied that that should now be done.

*By the Court.*—Judgment reversed, and the cause remanded with directions to dismiss the complaint.