273 P.2d 676

**LUCKY FIVE MINING CO.**

v.

**H. & H. MINES, Inc.**

No. 8064.

Supreme Court of Idaho.

July 8, 1954.

Rehearing Denied Sept. 2, 1954.

James G. Towles, Kellogg, Therrett Towles, Spokane, Wash., for appellant.

Sennett S. Taylor, Chas. E. Horning and Eugene F. McCann, Wallace, for respondent.

GIVENS, Justice.

October 6, 1939 appellant leased in writing to W. A. Noon, for a term ending November 1, 1942, with provisions for extensions on terms not involved herein, the California (referred to as California Placer One), Idaho, Oregon and Relief Creek No. 2, placer mining claims, in the Orogrande and Elk City mining districts in Idaho County, for a cash rental of $500 on the execution of the lease; $2,000 to be paid, on certain contingencies, on the 15th day of May, 1940. Further rentals and royalties of 15% upon determination by lessee to proceed and notice of such intention, following completion of his testing on or before May 15, 1940. Lessee agreed to begin work within sixty days thereafter and if he did not so commence— except for certain conditions not important

herein—to pay as advance royalty $7,000. Upon failure to commence operations within twelve months thereafter, a further $7,000 and upon failure to commence operations within twelve months after that, the lease to be forfeited. Lessor warranted its title, but if title was questioned or defects appeared from an examination of the abstract of title, 'or otherwise,' the lessor would quiet title and if it did not do so, after twenty days' notice, the lessee could; the expenses thereof to be deducted from the purchase price. Lessee was given immediate right of entry and unlimited scope to test, at his expense, the land; to complete same on or before May 15, 1940 and same day, to give notice whether he intended to proceed. Upon notice of intention to proceed—

"* * * the payment of $2000 * * * shall become due and payable."

"* * * If lessee shall fail to make said payment of $2000 on or before May 1–, 1940, this lease shall thereby be terminated and lessee shall thereupon vacate and surrender said premises." Paragraph 4 of the lease stated:

"* * * the maturity of any such payment or obligation may be extended until such defect (title) shall have been corrected or such litigation shall have been terminated."

Paragraph 17 was as follows:

"Lessee hereby reserves the right at any time to surrender possession of

said premises and to terminate and cancel this lease by serving thirty days' written notice of such surrender and cancellation upon lessor."

Title was questioned and the defects were considered so serious by both lessor and lessee, that lessor brought quiet title suit December 6, 1943.

The lease was assigned December 8, 1949 to respondent. Trial was had in the quiet title suit March 28, 1950 and decree entered March 31, 1950, from which the lessor appealed because title was not quieted in all the property claimed. Final decision of this Court was rendered July 26, 1951; Lucky Five Min. Co. v. Central Idaho Placer Gold Mining Co., 71 Idaho 490, 235 P.2d 319, q. v. affirming in part and reversing in part, with directions to the trial court.

Appellant's complaint herein alleges that in compliance with such mandate, the trial court entered the decree quieting title in lessor as directed August 20, 1951. Respondent's amended answer admitted that such decree was so entered on said date.

Suit herein was filed to enforce payment of the $2,000 and $14,000 royalties, on the theory the title was quieted as of May 15, 1950 and mining operations were not commenced within succeeding sixty-day and twelve-month periods thereafter, and alleging various claimed fraudulent claim manipulating transactions by defendant and particularly John C. Higgins, the asserted alter ego of William A. Noon, original lessee, and the real power behind the defendant Company. Higgins characterized Noon as his mining scout, and Higgins negotiated and revised the leases and was, by his own say-so, dominant in the transaction.

Among other defenses, respondent claimed the service in the quiet title suit was defective as to defendant Central Idaho Placer Gold Mining Company, a co-partnership; hence, title never has been quieted, testing had not been completed and maturity of payments and obligations were extended until the termination of the title litigation and before that it had, as permitted, cancelled the lease; and that appellant's action was barred by Section 9-505, I.C.

Judgment was rendered for respondent because the above service was defective and title never quieted in the former suit and respondent had a reasonable time after the litigation terminated to further test and notify acceptance and begin operations, because testing and mining costs had increased.

Shortly after the lease was negotiated, Higgins repeatedly attempted to get Clinkenbeard, appellant's secretary and evidently moving spirit, to modify and change the terms of the lease as too onerous. Clinkenbeard consistently resisted such importunities and the lease never was changed.

Paragraph 8 of appellant's complaint thus alleges appellant's construction of the latter part of Paragraph 4 of the lease:

"Said lease also provided in effect that if there was any substantial defect in the title to said leased premises, or any part thereof, plaintiff as lessor therein would take the necessary legal steps to remove or correct the same, and that if any such defect would jeopardize lessee's right to possession or operation of said premises or to remove minerals therefrom, and if any payment should fall due or any other obligation of lessee should mature thereunder while such defect should remain uncorrected or while any litigation based on any alleged defect in lessor's title should be pending, the maturity of any such payment or obligation should be extended until such defect should have been corrected or such litigation terminated."

While there was a conflict in the evidence, there is sufficient evidence to sustain Paragraph 14 of the Findings:

"That prior to the 15th day of May, 1940, the lessees, W. A. Noon and John C. Higgins, the defendant's predecessors in interest, were informed that the title of the lessor, the plaintiff in this suit, was defective and subject to serious question by reason of the fact that its title to said Relief Creek claims substantially depended upon an alleged conveyance of said claims to said lessor from the Central Idaho Placer Gold Mining Company, Ltd., and that it did not appear of record in Idaho County that said Central Idaho Placer Gold Mining Company, Ltd., had ever made a legal conveyance or any conveyance to said lessor. That said information which had been acquired by said lessees was conveyed to the lessor, the plaintiff herein, and that it was insisted by said lessees that the lessor proceed immediately with the commencement and prosecution of a suit to quiet the lessor's title to said claims and that acting within the protective provisions of said lease, the lessees notified said lessor that they would conduct no further testing or other operations on said property and that they would make no further payments to the lessor until such time as such suit should have been filed and prosecuted to a decree which would effectively clear the title of the lessor to said property."

Paragraph 1 of the lease provides:

" * * * That the lessee agrees to commence such testing operations promptly and to complete the same on or before May 15, 1940, or before, and on said date to give notice whether he intends to proceed under this lease, whereupon, if he gives notice of intention to proceed with placer mining operations, the payment of $2000 above

428

provided to be paid shall become due and payable. * * *."

There were other provisions in the lease, but they are not pertinent to the controversy herein.

Only one ground, namely, defective title and its correction authorized deferment of the maturity of payments and obligations.

The payment of the $2,000 depended on two conditions: completion of the testing by May 15, 1940, which, because the title was defective and prior thereto had been questioned, was deferred until the litigation was terminated August 20, 1951; the second condition was that upon completion of the testing, so deferred until August 20, 1951, the lessee had the option to notify or decline to notify (the way in which such notice was to be given is specified in Paragraph 11 of the lease) lessor that the lessee intended to proceed with the placer mining operations.

■ There was no provision for the extension or deferment of such deadline for testing because of increased testing or mining costs. Allowing such deferment for such reason injected into the lease a new term or provision, protective to respondent, which would materially alter the written instrument. The evidence as to increased costs as justification for continuing the time within which the testing had to be completed was inadmissible and deferment thereby was not authorized by the lease—hence, the judgment is not sustainable on that basis. Hurt v. Monumental Mercury Mining Co., 35 Idaho 295, 206 P. 184; First Nat. Bank v. Cruickshank, 38 Idaho 789, 225 P. 142; Davis v. Idaho Minerals Co., 40 Idaho 64, 231 P. 712; Larsen v. Buys, 49 Idaho 615, 292 P. 239; Nuquist v. Bauscher, 71 Idaho 89, at page 95, 227 P.2d 83; Brooks v. Coppedge, 71 Idaho 166, 228 P.2d 248, 27 A.L.R.2d 645; Davis v. Pancheri, 72 Idaho 28, 236 P.2d 716; Fidelity Trust Co. v. State, 72 Idaho 137, 237 P.2d 1058.

■ Changing conditions do not justify new terms not contained in the lease. Beckwith v. Howard, 6 R.I. 1.

Respondent contends service in the quiet title suit on Central Idaho Gold Placer Mining Company, Ltd., a co-partnership, was fatally defective and can now be urged.

There is a hopeless conflict of authorities as to when and under what circumstances a party to a preceding suit may or may not, in a subsequent suit, question service of process in the prior suit, not on him or it, but on another defendant and where, in that preceding suit, the party now complaining had the right to raise the issue, but did not do so. There is likewise conflict of authorities as to whether process must be void to be so questioned or merely defective. Waiving and not deciding such questions, we determine the issue of service.

Section 5–323, Idaho Code, is as follows:

"When two or more persons associated in any business transact such

business under a common name, whether it comprises the names of such persons or not, the associates may be sued by such common name, the summons in such cases being served on one or more of the associates; and the judgment in the action shall bind the joint property of all the associates, in the same manner as if all had been named defendants and had been sued upon their joint liability."

■ Section 5–323, I.C., has been held to apply to suits against partnerships, Gardiner v. Eclipse Grocery Co., 72 Mont. 540, 234 P. 490; Lindsay Great Falls Co. v. McKinney Motor Co., 79 Mont. 136, 255 P. 25, in the common name of such partnership and it does not require that the complaint or summons contain the name of the partners or any one of them, only that the summons in such case be served on one or more of the partners.

Substituted service by publication and mailing was thus made in accordance with that Section and Section 5–508, I.C.

The complaint and summons in the quiet title suit contained the name of the co-partnership, and the body of the complaint enumerated the names of the parties who composed said partnership. A copy of the summons and complaint was mailed to the partnership at its last known address and to the partner, C. J. Kelleher, at his last known address, as service on the partnership. By Section 5–503, I.C., the summons contains the names of the parties to the action. As to a partnership, under Section 5–323, I.C., the name of the partnership, when sued in the common name as herein, is thus the name in the summons, likewise, the complaint. Section 5–605, I.C.

■ The service of the summons in the quiet title suit on the Central Idaho Gold Placer Mining Company, Ltd., a co-partnership, substantially complied with the pertinent statutes and is good as against the attack herein. Barnes v. Colorado Springs & Cripple Creek Dist. Ry. Co., 42 Colo. 461, 94 P. 570; Ord v. Neiswanger, 81 Kan. 63, 105 P. 17, at page 19, 29 L.R.A.,N.S., 287; Holden v. Mensinger, 175 Cal. 300, 165 P. 950; Ginsberg Tile Co. v. Faraone, 99 Cal.App. 381, 278 P. 866; Bley v. Dessin, 31 Cal.App.2d 338, 87 P.2d 889; Davenport v. William Adler & Co., La.App., 129 So. 382.

After the litigation was terminated and the right to test had expired August 20, 1951, lessee never notified lessor it intended to proceed with the contract. By the express terms of the lease, liability to pay the $2,000 was conditioned on notice of intention to proceed, never given. The further provision in the lease states that if the $2,000 was not paid, the lease would be terminated.

There was a provision in the lease that all payments *made* (emphasis supplied) would be retained as liquidated damages and reasonable rental value, but there was

no provision in the lease that if lessee did not, at the termination of the right to test, give notice it intended to proceed, nevertheless, it would have to pay the $2,000 and the $2,000 was not paid. The lessee not only did not give notice that it intended to proceed, but gave notice of cancellation of the lease August 10, 1951, as follows:

"Pursuant to applicable provisions of Mining Lease dated October 6, 1939 between Lucky Five Mining Company, a Washington corporation, lessor, and W. A. Noon, lessee, covering Rock Pile Placer Mining Claim and Rock Pile No. 2 Placer Mine Claim, situate in the Orogrande and Elk City Mining Districts, Idaho County, Idaho and Mining Lease dated October 6, 1939 between Lucky Five Mining Company, a Washington corporation, lessor, and W. A. Noon, lessee, covering the California (sometimes referred to as California Placer One), Idaho, Oregon and Relief Creek No. 2 Placer Mining Claims, situate in the Orogrande and Elk City Mining Districts in Idaho County, Idaho, notice of the assignment of each of which to H & H Mines, Inc. has heretofore been given, H & M Mines, Inc. hereby gives notice of its surrender of possession of all of said premises and of the termination and cancellation of each of said leases, effective immediately." Ptfs. Ex. 7.

followed with a confirming and concluding letter of September 12, 1951, as follows:

"Notice of surrender of possession of premises and of the termination and cancellation of that certain mining lease dated October 6, 1939 between Lucky Five Mining Company, a Washington corporation, lessor, and W. A. Noon, lessee, covering Rock Pile Placer Mining Claim and Rock Pile No. 2 Placer Mining Claim, situate in the Orogrande and Elk City Mining Districts, Idaho County, Idaho, and of that certain Mining lease dated October 6, 1939 between the same parties covering the California (sometimes referred to as California Placer One), Idaho, Oregon and Relief Creek No. 2 Placer Mining Claims, situate in the Orogrande and Elk City Mining Districts in Idaho County, Idaho, having heretofore been given on the 10th day of August, 1951, and the premises having been surrendered, H & H Mines, Inc. regards the said leases terminated and cancelled." Ptfs. Ex. 8.

and the court found the lease was thus cancelled and terminated September 12.

■ The judgment, therefore, was correct in holding the $2,000 was not due.

The periods in which the royalties were due had not transpired, so nothing is due in the way of royalty.

This disposition of the case renders it unnecessary to consider any other assignments of error or counter contentions.

431

The judgment is, therefore, affirmed. Costs to respondent.

PORTER, C. J., and TAYLOR, THOMAS and KEETON, JJ., concur.