440 P.2d 345

P. A. LEGG and Nellie L. Legg, husband and wife, Plaintiffs,

v.

John A. BARINAGA and Helen Barinaga, a partnership dba Weiser Sheep Company and Robert Smylie, Allan Shepard, Joe R. Williams, Louis E. Clapp, D. F. Engelking, State Board of Land Commissioners of the State of Idaho, and O. J. Buxton, State Land Commissioner, Defendants.

John A. BARINAGA and Helen Barinaga, a partnership dba Weiser Sheep Company, Counterclaimants-Respondents,

v.

P. A. LEGG and Nellie L. Legg, husband and wife, and P. A. Legg and Alvin Legg, co-partners, Counterdefendants-Appellants.

No. 10079.

Supreme Court of Idaho.

May 6, 1968.

Smith, Miller & Weston, Caldwell, for appellants.

Hicks & Kennedy, Mountain Home, for respondents.

SMITH, Chief Justice.

Plaintiffs, as lessees of state land, originally brought this action against defendants, seeking to test the constitutionality of I.C. § 58–313, which permits a lessee of state land to hold the land after sale for a period of two years, from December 1st "next occurring after the date of sale." Defendants answered generally, alleging the constitutionality of the statute. Such portion of the action was resolved by a summary judgment granted against plaintiffs on their complaint and upholding the constitutionality of I.C. § 58–313. No appeal was taken from the summary judgment.

The present appeal involves a counterclaim, in which respondents alleged that plaintiffs, P. A. Legg and Nellie L. Legg, owned unfenced grazing land adjacent to respondents' land, and that the Leggs deliberately overstocked their land and encouraged their cattle to trespass and graze upon respondents' land. Respondents prayed for an injunction restraining P. A. and Nellie L. Legg from allowing their livestock to trespass upon respondents' land.

John Barinaga is the managing partner of a partnership consisting of himself and his mother, Helen Barinaga, doing business as Weiser Sheep Company. The partnership owns approximately 8,000 acres of deeded land and leases another 4,000 acres, all in Washington County, Idaho. The partnership is principally engaged in the raising of sheep, and runs approximately 2,600 sheep.

Appellant P. A. Legg engages in the raising of cattle in partnership with his son, Alvin Legg. The Leggs own approximately 1,200 acres of unfenced grazing land and 1,440 acres of fenced grazing land, adjacent and contiguous to that of the Barinagas and not separated therefrom by a fence or other boundary. The Leggs were running approximately two hundred head of cattle on the land in question. Only a driftwood fence is in the area, open on both ends. Respondents had possession of the land at both sides of the fence.

The land of both parties, in an area known as Baysinger, is situate some seven miles west of Cambridge in Washington County. The general terrain of the land is hilly and rocky, and vegetation consists mostly of bunch grass, browse, and sheep grass. Respondents and appellants have 12 to 13 miles of common boundary, none of which is fenced.

At trial, it developed that although respondents' counterclaim was directed against only P. A. Legg and Nellie L. Legg, the cattle operation was in fact a partnership venture consisting of P. A. Legg and Alvin Legg. Appellants moved that the action be dismissed on the ground that it was not brought against the real party in interest. The trial court then ordered the partnership of P. A. Legg and Alvin Legg joined as an indispensable party and the counterclaim amended accordingly. Appellants were afforded opportunity to move for a continuance in the event such

joinder would prejudice them, but they made no such motion or showing. The trial proceeded without service of process on the partnership as such, or on Alvin Legg, and without allowing the partnership to file an answer to the counterclaim. The partnership objected to the joinder because no service had been made upon either of the partners, but the court overruled the objection.

The trial court found that appellants had overstocked their grazing land to the degree that their cattle continuously and repeatedly invaded respondents' land in search of food and water; also, that appellants overstocked their lands intentionally, with the result that damage, in the form of loss of pasturage, was caused to the respondent's property. The court then decreed that appellants, P. A. Legg, Nellie L. Legg and Alvin Legg, be enjoined from stocking the unfenced grazing lands under their control, not enclosed by a fence, to any extent greater than five acres per animal unit per month. The court defined an animal unit as a cow with a calf under six months of age, or a horse, or a bull, steer, heifer or cow over six months of age. Appellants appeal this injunction decree.

Appellants assert that the trial court erred in entering judgment against parties who were not served with process; they claim, thus, that the court's injunction cannot apply as against the partnership or Alvin Legg.

I.C. § 5–323 states:

"When two or more persons associated in any business transact such business under a common name, whether it comprises the names of such persons or not, the associates may be sued by such common name, the summons in such cases being served on one or more of the associates; and the judgment in the action shall bind the joint property of all the associates, in the same manner as if all had been named defendants and had been sued upon their joint liability."

See also I.R.C.P. 4(d) (3).

I.C. § 5–323 has been held to apply to suits against partnerships in the common name of the partnership. Lucky Five Mining Co. v. H. & H. Mines, 75 Idaho 423, 273 P.2d 676 (1954); see Gardiner v. Eclipse Grocery Co., 72 Mont. 540, 234 P. 490 (1925); Lindsay Great Falls Co. v. McKinney Motor Co., 79 Mont. 136, 255 P. 25 (1927). The complaint or summons need not contain the name of any partner. The summons in such case must be served on one or more of the partners. Lucky Five Mining Co. v. H. & H. Mines, supra.

At the time of service of summons upon P. A. Legg, individually, there was no indication that he was being served as a partner in association with Alvin Legg; nor was there any subsequent service of summons upon Alvin Legg. The question thus presented is whether the service upon P. A. Legg, albeit prior in time to the joinder of the partnership as an additional counterdefendant, is sufficient to constitute service upon P. A. Legg in his capacity as an associate of the partnership so as to bind the partnership and Alvin Legg to the judgment rendered.

The Utah Supreme Court, interpreting a statute identical to I.C. § 5–323, stated:

"Where a suit was brought and judgment was obtained against three alleged partners in their individual names, and not in the common name of the firm, and the service of summons was on two of such members, this was not sufficient to give the court jurisdiction to enter a judgment against the member who was not served." Blyth & Fargo Co. v. Swenson, 15 Utah 345, 49 P. 1027 (1897).

We are constrained to the view that service of process must be upon the partnership, or at least upon an individual member in his role as agent of the partnership. See Louisiana Farm Bureau Cotton Growers' Co-Op. Ass'n v. Bacon, 164 La. 126, 113 So. 790 (1927); 68 C.J.S. Partnership § 213, p. 687 (1950). Since the injunction decree was such as necessarily to be applied in personam, see Taylor v. Hulett, 15 Idaho 265, 97 P. 37, 19 L.R.A.,

**228**

N.S., 535 (1908); Eisner v. Williams, 298 Mich. 215, 298 N.W. 507 (1941); 43 C.J.S. Injunctions § 168, pp. 793–794 (1945), the court could not acquire jurisdiction over parties not properly served. Accordingly, we hold that the trial court's injunction is invalid as applied to the partnership between P. A. and Alvin Legg and to Alvin Legg in his individual capacity.

■ Appellants assign as error the trial court's finding that the lands of the counterdefendants "have a carrying capacity of five acres per animal unit per month." In arriving at that figure the court necessarily relied on opinions of experts. Seven witnesses, possessing varying degrees of familiarity with the land in question, testified as to their estimates of its carrying capacity. The court based its finding on the approximate median of the figures so provided. The expert testimony must be given such weight as it appears to be justly entitled. In re Reed's Estate, 132 Cal.App. 2d 732, 282 P.2d 935 (1955); Stern v. Krasne, 130 Cal.App.2d 818, 280 P.2d 45 (1955); Midland Valley R. Co. v. Lowery, 207 Okl. 227, 248 P.2d 1042 (1952). Under the evidence, the trial court did not abuse its discretion in finding that five acres per animal unit per month is the carrying capacity of the land in question.

■ The mere turning loose of livestock upon one's own premises or upon the public domain has generally been recognized as not per se constituting a wilful or intentional trespass, notwithstanding that one knew, or should have known, that the livestock might stray to another's land. City of Bellevue v. Daly, 14 Idaho 545, 94 P. 1036, 15 L.R.A.,N.S., 992 (1908); Swanson v. Groat, 12 Idaho 148, 85 P. 384 (1906); Garcia v. Sumrall, 58 Ariz. 526, 121 P.2d 640 (1942); Richards v. Sanderson, 39 Colo. 270, 89 P. 769, 121 Am.St.Rep. 167 (1907); Schmudlach v. Danner, 173 Wis. 513, 181 N.W. 727 (1921). However, some jurisdictions have held an owner of livestock guilty of wilful or intentional trespass, where he turned the stock out to graze on his own land or on the public domain, where there was insufficient pasturage or water on such land to meet the needs of the stock, with the result that the animals went on to adjoining land owned by another in search of pasturage or water. Light v. United States, 220 U.S. 523, 31 S.Ct. 485, 55 L.Ed. 570 (1911); Wright v. Atkinson, 39 N.M. 307, 46 P.2d 667 (1935); Dunbar v. Emigh, 117 Mont. 287, 158 P.2d 311 (1945); Hill v. Chappel Bros., 93 Mont. 92, 18 P.2d 1106, 1109 (1932). See Annot., 158 A.L.R. 375. See also Lazarus v. Phelps, 152 U.S. 81, 14 S.Ct. 477, 38 L.Ed. 363 (1894). Lazarus v. Phelps, supra, is frequently cited on the question of wilful trespass; therein the court held that a lessee of land, who stocked the land with more cattle than it could properly support, so that, in order to obtain the proper amount of grass the cattle would be forced to stray upon the adjoining land of another, would have the duty to make compensation as clearly as if he had driven the cattle onto the adjoining land in the first instance.

■ The trial court, having found that appellants overstocked their own grazing land, ruled that a wilful trespass resulted when appellants' cattle invaded the lands of respondents. The evidence amply supports such finding and ruling.

■ Considering the nature of the injury, and the possible necessity of a multiplicity of actions to obtain redress at law, injunction is a proper remedy to restrain repeated or continuing trespasses. See Wright v. Atkinson, supra; Rosenblatt v. Escher, 184 Miss. 274, 185 So. 551 (1939); Thrasher v. Hodge, 86 Mont. 218, 283 P. 219 (1929); Commonwealth v. Bloom, 37 Pa.Co.Ct.R. 310 (1909); Annot. 60 A.L.R. 2d 310. Under the circumstances herein, since the wilful trespass was initiated by the overstocking of grazing land rather than by an intentional driving of cattle onto respondents' land, respondents properly sought the remedy of injunction to enjoin appellants from overstocking the land under their control, to an extent greater than the carrying capacity of the land.

The judgment and decree is affirmed insofar as it was intended to apply to P. A. Legg and Nellie L. Legg, as individuals, and reversed as to the partnership of P. A. Legg and Alvin Legg, and as to Alvin Legg in his individual capacity. Costs to appellants.

TAYLOR, McQUADE, McFADDEN and SPEAR, JJ., concur.