665 P.2d 1056

IDAHO FALLS BONDED PRODUCE AND SUPPLY COMPANY, an Idaho Corporation, **Plaintiff-Respondent, Cross-Appellant,**

v.

GENERAL MILLS RESTAURANT GROUP, INC., formerly known as Red Lobster Inns of America, Inc., a foreign corporation, **Defendant-Appellant, Cross-Respondent.**

No. 14523.

Supreme Court of Idaho.

June 28, 1983.

H. William Furchner, Blackfoot, for defendant-appellant, cross-respondent.

Douglas Roy Nelson, of Sharp, Anderson, Bush & Nelson, Idaho Falls, for plaintiff-respondent, cross-appellant.

SHEPARD, Justice.

This is an appeal from a judgment against General Mills Restaurant Group, Inc., formerly known as Red Lobster Inns of America, Inc., resulting from its refusal to pay for potatoes it admittedly received. On appeal, defendant-appellant General Mills (herein referred to by the name of its subsidiary, Red Lobster Inns) asserts that the evidence at trial does not support the finding of the trial court that Red Lobster Inns was the actual purchaser of the potatoes. We affirm the judgment against Red Lobster Inns, but on the cross-appeal of Idaho Falls Bonded Produce, we reverse the trial court's determination of interest awardable on the judgment.

■ The accepting and weighing of evidence is a matter for the discretion of the trial court and the findings of the trial court will not be reversed unless clearly erroneous. I.R.C.P. 52(a). *See also Cheney v. Palos Verdes Investment Corp.,* 104 Idaho 897, 665 P.2d 661 (1983); *Rueth v. State,* 103 Idaho 74, 644 P.2d 1333 (1982); *Javernick v. Smith,* 101 Idaho 104, 609 P.2d 171 (1980). Here we find no error in the finding of the trial court that the defendant Red Lobster Inns was the principal and actual purchaser of the potatoes. What could be characterized as overwhelming evidence militates against the argument of Red Lobster Inns that Empire Distributing Company of New York acted herein as an independent buying broker and that Empire, not Red Lobster Inns, was the entity legally responsible for payment of the potatoes. We disagree with this allegation of defendant's and we note that the evidence is conclusively to the contrary.

Idaho Falls Bonded Produce, with offices in Idaho Falls, Idaho, engages in packaging and shipping of fresh Idaho potatoes for nationwide distribution. General Mills, through its subsidiary Red Lobster, operates a chain of restaurants throughout the United States.

In September 1975, John Francher was produce purchasing agent for defendant Red Lobster, and, while at a convention in Sun Valley, Idaho, he approached John Stanger, the president of plaintiff Bonded Produce, to arrange a supply of Idaho baking potatoes for the Red Lobster restaurants. Stanger indicated interest in dealing with Red Lobster and checked a trade reference book for the credit and business practice rating of Red Lobster, noting that Francher was listed therein as Red Lobster's produce buyer. Some weeks later, Francher telephoned Stanger, indicating that Francher was prepared to begin ordering potatoes by phone and that Red Lobster desired to use a *buying* broker, A.J. Sales, to handle the purchases. Stanger determined that A.J. Sales had an excellent credit and business practice rating and agreed to the arrangement, *i.e.,* Bonded Produce would receive orders from Francher to ship potatoes to various locations and would then invoice A.J. Sales as the buying broker. The parties dealt with each other through A.J. Sales from November or December 1975 until June 1976. Those transactions through A.J. Sales, the invoices and payments, are not in issue, and Bonded Produce agrees that if it had not been paid for dealings conducted by A.J. Sales, it would have had no claim against Red Lobster.

In June 1976, Red Lobster notified Bonded Produce that it was not satisfied with the performance of A.J. Sales and that it would thereafter purchase from Empire Distributing Company of New York. However, Bonded Produce investigated Empire's ratings and found that Empire was a new company without an established financial record. This finding prompted Stanger to call Francher to express concern over Empire's lack of credentials and to indicate that Bonded Produce would not deal with Empire. Testimony indicated that Francher then agreed that Empire would simply function as Red Lobster's *billing* agent and that the account would be guaranteed by Red Lobster. All other arrangements relat-

ing to ordering and delivery continued to be handled by Red Lobster, with Empire only doing the invoicing.[1]

In August 1976, Empire had become delinquent in payments owed to Bonded Produce for potatoes shipped to the Red Lobster account. In September, Stanger and Francher again met at Sun Valley, where Francher gave Stanger a check written on Empire's bank account bringing the delinquent billings up to date. Francher promised to keep the billing current, and Stanger testified that in reliance upon that representation, Bonded Produce continued shipping to Red Lobster's account. According to Stanger, he was again assured by Francher that Red Lobster would "guarantee the whole program."

Thereafter, Empire's accounts with Bonded Produce continued to be delinquent and Bonded Produce attempted unsuccessfully to contact Francher. Bonded Produce also attempted unsuccessfully to call Empire. Some weeks later, Hadway, an agent of Red Lobster, called Stanger, stating that Red Lobster had found internal problems with its accounting procedure and was investigating and seeking Francher. Hadway requested that Bonded Produce immediately notify Red Lobster's jobbers and distributors that they should pay Bonded directly rather than remitting payment through Empire. By such process, Bonded Produce was able to recover about one-quarter of its outstanding Red Lobster accounts. The remaining moneys owing to Bonded had already been paid to Empire. In September 1976, Bonded Produce filed a complaint with the U.S. Department of Agriculture under the Perishable Agriculture Commodities Act, naming Red Lobster as purchaser and Empire as billing agent, for non-payment of roughly $34,000 for agricultural goods shipped in interstate commerce. This complaint was later withdrawn.

In December 1976, representatives of Red Lobster and Bonded met to discuss the unpaid Empire accounts. Following this meeting, Red Lobster proposed that Bonded continue service to Red Lobster and that the arrears be recovered by the addition of a 20¢ premium to every hundred weight of potatoes invoiced to distributors for Red Lobster. Bonded Produce agreed and continued to ship potatoes to Red Lobster's distributors, intending to have no claim against Red Lobster if those jobbers and distributors did not pay. That course of dealing between the parties lasted through 1978, but the extra premium on the shipment was paid only occasionally. Bonded Produce concluded that the arrangement would not result in payment of the delinquency and filed the instant action in August of 1979.

At trial, Red Lobster asserted that it was not responsible as either a purchaser or a guarantor of Bonded Produce's dealings with Empire. Although there was some dispute in the evidence regarding whether Red Lobster actually received all of the shipped potatoes and as to the amount of credit to which Red Lobster was entitled as a result of the 20¢ premium arrangement, the trial court found in accordance with the assertions of Bonded Produce. We find no error in such holding.

Much of the testimony at trial and on appeal involves the proper characterization of Empire, *i.e.,* whether its status was that of an independent buying broker or that of a billing agent acting solely on behalf of and at the pleasure of Red Lobster. Uncontroverted testimony indicated that in the trade of agricultural commodities, the buying broker buys in his own name for distribution to his personal customers; is governed by the provisions of the Perishable Agriculture Commodities Act; participates in the setting of price and handling of complaints and correspondence; and directs and coordinates shipping; and that thus the broker acts in his own behalf and not as someone else's agent whose sole responsibility is billing. Clearly, Empire was not an independent buying broker but rather func-

---

1. At the time of trial, Francher had evidently absconded and was being unsuccessfully sought by both Red Lobster and the F.B.I. Hence, Red Lobster offered no direct testimony as to those early negotiations between Stanger and Francher, and Bonded Produce's evidence was largely uncontroverted.

tioned merely as a billing agent for Red Lobster. We, accordingly, affirm the holding of the trial judge that Red Lobster is responsible for the purchase price of the potatoes shipped by Bonded Produce.

We hold that the evidence plainly shows the intent of the parties that Red Lobster was to be the purchaser of all potatoes shipped by Bonded Produce. Empire's sole contact with Bonded Produce consisted of remitting payment when so directed by Red Lobster. Empire carried on no negotiations with Bonded Produce and the trial court correctly found that no contractual arrangements arose between Bonded Produce and Empire, since Empire was not privy to the contract between Bonded Produce and Red Lobster. The evidence before the court included relevant documents, such as invoices and shipping journals of Bonded Produce; the conduct of the parties; the circumstances surrounding the course of dealings; usage of trade; and custom within the industry; all of which militate in support of the trial court's finding that Red Lobster was the purchaser and was therefore responsible for the purchase price. *Anderson & Nafziger v. G.T. Newcomb, Inc.,* 100 Idaho 175, 595 P.2d 709 (1979); *Interform Co. v. Mitchell,* 575 F.2d 1270 (9th Cir.1978); *Nysingh v. Warren,* 94 Idaho 384, 488 P.2d 355 (1971). *See generally* I.C. § 28–2–202; Restatement (Second) of Contracts §§ 202(4)–(5), 212–213, 222–223 (1981); Corbin on Contracts §§ 538–543.

■ We note only in passing Red Lobster's argument that if it is found to have guaranteed Empire's account, such an oral promise to answer for the debt of another falls within the statute of frauds. We do not agree. Since we hold that Red Lobster was the principal purchaser of the potatoes, an oral guarantee of Empire's billing (as distinguished from the guarantee of the whole transaction) adds nothing to the liability of Red Lobster. We further reject Red Lobster's assertion that the trial court erred in accepting Bonded Produce's calculations of the amount owing for the potatoes. Business records possessing a reasonable degree of necessity and trustworthi-

ness are to be received in evidence unless the trial court, after examination, doubts their reliability. *Cheney v. Palos Verdes Investment Corp., supra; Hammond v. Hammond,* 92 Idaho 623, 448 P.2d 237 (1968); *Kelson v. Ahlborn,* 87 Idaho 519, 393 P.2d 578 (1964). The finding of the trial court on the question of damages will not be set aside where based on substantial and competent, albeit conflicting, evidence. *Cheney v. Palos Verdes Investment Corp., supra; Hafer v. Horn,* 95 Idaho 621, 515 P.2d 1013 (1973); *Big Butte Ranch, Inc. v. Grasmick,* 91 Idaho 6, 415 P.2d 48 (1973).

■ Finally, we consider Bonded Produce's cross-appeal from the award of interest at eight per cent upon amounts due under the contract from January 21, 1977 to January 27, 1982. I.C. § 28–22–104, prior to 1981, provided:

"When there is no express contract in writing fixing a different rate of interest, interest is allowed at the rate of eight cents (8¢) on the hundred by the year on:

1. Money due by express contract.

2. Money after the same becomes due.

3. Money lent.

4. Money due on the judgment of any competent court or tribunal.

5. Money received to the use of another and retained beyond a reasonable time without the owner's consent, express or implied.

6. Money due on the settlement of mutual accounts from the date the balance is ascertained.

7. Money due upon open accounts after three (3) months from the date of the last item."

That statute was amended effective July 1, 1981 to allow interest at twelve per cent as to money due on contracts and on open accounts. Bonded Produce, therefore, argues that interest should have been awarded at the rate of twelve per cent on moneys due following July 1, 1981. Red Lobster has not addressed this question either in brief or at oral argument and hence we adopt the position of Bonded Produce.

**50**

The judgment is affirmed except as to that portion relating to interest, and the cause is remanded with instructions that the trial court allow interest at the rate of eight per cent for the amounts due prior to July 1, 1981 and at the rate of twelve per cent for the amounts remaining due thereafter. Costs to the respondent.

DONALDSON, C.J., and BAKES and HUNTLEY, JJ., concur.

BISTLINE, Justice, specially concurring.

Generally I am able to agree with the Court's opinion, but find a problem with its holding that "Red Lobster Inns was the principal and actual purchaser of the potatoes," the problem being that the thrust of the Court's opinion declines to consider the separate entities of the parties, and, in particular, that of Empire.

However, I am not averse to meeting head on the assertion by Red Lobster that it is protected by the Statute of Frauds, I.C. § 9–505(2), namely the requirement that the promise to answer for the default of another be in writing. It runs in my mind that a basic principle learned in first year contracts class in law school is that courts will not apply the provisions of the Statute of Frauds when to do so would work a fraud. Countless cases so hold and they are not needful of citation. The Red Lobster's course of conduct in this case certainly makes that principle applicable, and it is on that basis, primarily, that I vote to affirm the judgment.