745 P.2d 294

Pete  MILLER,
Plaintiff–Respondent/Cross–Appellant,

v.

E.  Paul  MILLER,
Defendant–Appellant/Cross–Respondent.

No. 16390.

Supreme Court of Idaho.

Oct. 26, 1987.

Racine, Olson, Nye, Cooper & Budge, Chartered, Pocatello, for defendant-appel-

lant/cross-respondent E. Paul Miller; W. Marcus W. Nye, Pocatello, argued.

Hawley Troxell Ennis & Hawley, Pocatello, for plaintiff-respondent/cross-appellant Pete Miller; Thomas J. Holmes, Pocatello, argued.

BISTLINE, Justice.

In May 1984 the Bannock County Commissioners, pursuant to a petition, had formed a herd district which encompassed the Millers' land together with portions of BLM land. The herd district ordinance was in effect at the time the damages were caused by E. Paul Millers' grazing livestock.

E. Paul Miller and Pete Miller are brothers who own or lease adjoining lands in Bannock County; some of those lands also adjoin property owned by the Federal Bureau of Land Management (hereinafter BLM lands). Pete's initial action was filed in small claims court, where damages were claimed based on allegations of trespass by E. Paul's livestock during the summer of 1984. The damages claimed included 3,000 pounds of barley seed ruined by E. Paul's horses, approximately 27 acres of planted hay consumed or trampled by E. Paul's cattle, and compensation for pasturage of E. Paul's cattle. The small claims court awarded Pete a judgment of $2,032.80.

E. Paul appealed the decision of the small claims court to the district court, which held a trial de novo. In that forum, E. Paul argued that since a large portion of BLM ground was included in the herd district that the entire herd district ordinance was void. The district court rejected this argument holding that under I.C. § 25–2401 (1977) et seq., the herd district ordinance was invalid only as to the BLM land but was otherwise valid. The district court concluded that under the herd district laws E. Paul had the duty to properly fence the outside boundaries of his property to prevent his livestock from trespassing upon another's property and that E. Paul failed to do so. The district court initially awarded its judgment against E. Paul in the sum of $2,070.

On a motion to alter judgment, the district court reduced the damage award by $700, disallowing compensation for pasturing E. Paul's cattle on BLM land for which Pete had forage rights. The court determined that Pete did not prove the pasturage was depleted to such an extent that he was unable to graze his animals, or prove that he had suffered any damages as a result of E. Paul's animals eating the forage.

Both parties have appealed to this Court, where the following issues are raised: (1) did the district court err in declaring the herd district valid as modified by it; (2) did the district court err in its award of damages; and (3) was the denial of a garnishment of the wages of E. Paul's nonparty spouse proper?

I

■ As to the first issue, E. Paul argues that the district court erred in its conclusion that a valid herd district was created. The creation of a herd district is provided for in I.C. § 25–2402:

**25–2402 (Supp.1987). Petition and requirements for district.**—(1) A majority of the landowners in any area or district described by metes and bounds not including open range and who are also resident in, and qualified electors of, the state of Idaho may petition the board of county commissioners in writing to create such area a herd district. Such petition shall describe the boundaries of the said proposed herd district, and shall designate what animals ... it is desired to prohibit from running at large ...; and shall designate that the herd district shall not apply to nor cover livestock, excepting swine, which shall roam, drift or stray from open range into the district unless the district shall be inclosed by lawful fences. ...

(2) Notwithstanding any other provision of law to the contrary, no herd district established before or after July 1, 1983, shall:

(a) Contain any lands owned by the United States of America, and managed by the department of interi-

or, bureau of land management, or its successor agency, upon which lands the grazing of livestock has historically been permitted.

. . . .

(3) Open range means all uninclosed lands outside cities and villages upon which by custom, license or otherwise, livestock, excepting swine, are grazed or permitted to roam.

The record shows that specific parcels of BLM land are within the boundaries of the herd district. The district court's interpretation of § 25–2402 brought it to the conclusion that the herd district was "invalid to the extent that it includes any public lands administered by the BLM. However, the inclusion of BLM land in the description of the herd district does not invalidate the creation of the district where the Board had proper authority ... to create such a district." R., p. 10. This holding however, is at variance with the plain language of I.C. § 25–2402. The Board of Commissioners do not have authority to enact a herd district outside the dictates of I.C. § 25–2402. The statutory restrictions are very definite: "no herd district ... shall contain any lands owned by the United States of America, and managed by the department of interior, bureau of land management." The action of the Commissioners attempted to authorize that which the legislature has expressly forbidden and as such is invalid.

The district court based its holding on the case of *Benewah County Cattlemen's Assoc., Inc. v. Board of County Commissioners of Benewah County*, 105 Idaho 209, 668 P.2d 85 (1983). In *Benewah:*

the Board of County Commissioners of Benewah County enacted the ordinance in question here (No. 13) entitled 'Benewah County Livestock Control Ordinance,' which applies throughout Benewah County. The ordinance essentially prohibits the running at large of livestock, requires fencing around property upon which livestock is grazed, and provides criminal sanctions for violations. The ordinance expressly leaves unaffected civil liability arising from trespassing

livestock. 105 Idaho at 211; 668 P.2d at 87.

The ordinance, so it was argued, was void since it attempted to exercise authority over incorporated cities within Benewah County which the Commissioners lacked authority to regulate. This Court held only that the ordinance was without force and effect within the limits of the incorporated cities but effective elsewhere throughout in the county.

The effect and applicability of *Benewah* can be readily distinguished from the case at bar. In *Benewah* the ordinance there in question was held to have been enacted pursuant to the grant of powers to the County, and thus not in conflict with the general laws, nor with Idaho Const., art. 12, § 2. Specifically, the Court's *Benewah* opinion stated:

The Idaho Constitution, art. 12, § 2 provides, in pertinent part: 'Any county ... may make and enforce, within its limits, all such local police, sanitary and other regulations as are not in conflict with its charter or with the general laws.' The legislature in I.C. § 31–714 has elaborated on the constitutional grant of police power to counties, stating:

'[t]he board of county commissioners may pass all ordinances ... not repugnant to law ... such as are necessary or proper to provide for the safety, promote the health and prosperity, improve the morals, peace and good order, comfort and convenience of the county and the inhabitants thereof, and for the protection of property therein, and may enforce obedience to such ordinances with such fines or penalties as the board may deem proper....'

This Court, in interpreting the broad statutory and constitutional powers granted to county commissioners to enact ordinances in furtherance of police powers, stated in *State v. Clark*, 88 Idaho 365, 399 P.2d 955 (1965), that:

'there are three general restrictions which apply to legislation under the authority conferred by [ID. CONST.

art. XII, § 2]: (1) the ordinance or regulation must be confined to the limits of the governmental body enacting the same, (2) it must not be in conflict with other general laws of the state, and (3) it must not be an unreasonable or arbitrary enactment.' 105 Idaho at 212, 668 P.2d at 88.

In *Benewah* the issue of the first restriction, whether the ordinance was within the limits of the Benewah County Commissioners, was addressed by the Court. In upholding the ordinance's validity the Court followed the cases of *Hobbs v. Abrams*, 104 Idaho 205, 657 P.2d 1073 (1983), and *Clyde Hess Distributing Co. v. Bonneville County*, 69 Idaho 505, 210 P.2d 798 (1949) which held under similar county commission enactments that "the fact that the regulation in question does not, in terms, exclude municipalities, does not make it invalid in the territory to which it is applicable." *Hobbs*, 104 Idaho at 207, 657 P.2d at 1075, *Clyde Hess*, 69 Idaho at 512, 210 P.2d at 802.

The actions of the Bannock County Commissioners, however, is more appropriately the concern of the second *Clark* restriction, *i.e.*, whether the enactment is in conflict with other general laws of the state. In *Benewah*, the Court cited *Maguire v. Yanke*, 99 Idaho 829, 590 P.2d 85 (1979), for the proposition that the ordinance was not to be in conflict with the herd district statutes since the ordinance restricted activities in "open range" in an attempt to control livestock short of enacting a "countywide" herd district.[1] 105 Idaho at 213, 668 P.2d at 89. The Bannock County Commissioners by ordinance purported to create a herd district which did contain parcels of BLM land within its boundaries. This was clearly in conflict with the provisions of I.C. § 25–2402(2)(a), and accordingly, was an invalid exercise of the commissioners' powers under *Clark*. The district court erred in upholding the validity of an ordinance exceeding the County Commissioners' authority.

■ The district court's modification of the herd district boundaries by exclusion of BLM lands was also improper and cannot be upheld. I.C. § 25–2401 (1977) provides: "The board of county commissioners of each county in the state shall have power to create herd districts within such county." I.C. § 25–2402 prescribes the method for creating a herd district—by which a petition is presented to the commissioners by a majority of landowners setting out the area or district which the commissioners are asked to declare a herd district. The presenting of the petition with its designated areas is within the province of a majority of landowners in the proposed district. Creation of a herd district by ordinance is within the power of the county commissioners. *See Maguire v. Yanke*, 99 Idaho 829, 590 P.2d 85 (1978). By an order effectively redesignating the areas of the herd district, the district court has performed a legislative function of the county commissioners. *See* I.C. §§ 31–714 (1983), 31–803 (1983). The exercise of a legislative function by the court is prohibited by Idaho Const., art. 2, § 1. The district court properly should have simply ruled that the herd district was invalid due to the inclusion of BLM land.

An additional issue raised by E. Paul was that the area in which the events occurred was "open range" and pursuant to I.C. § 25–2402 could not be included within a herd district. Our first holding that the herd district was invalid due to the inclusion of BLM land makes it unnecessary to discuss this issue.

■ Testimony by Pete Miller showed that the property onto which the cattle strayed was not completely fenced. Tr., pp. 48–49. Under the fence-out rule, *Maguire, supra; Easley v. Lee*, 111 Idaho 115, 721 P.2d 215 (1986), Pete would be unable to recover from the damages for the trespass. "If the land owner fails to 'fence out' cattle lawfully at large, he may not successfully complain of loss caused by such livestock straying upon his uninclosed land." *Strong v. Brown*, 26 Idaho 1, 7, 140 P. 773, 775 (1914), *quoting Beinhorn v. Griswold*, 27 Mont. 79, 69 P. 557 (1902).

---

**1.** Bistline, J. in a dissenting opinion in *Benewah* was of the view that state laws providing for the creation of herd districts were in conflict with the Benewah County ordinance.

Unlike the circumstances in *Strong*, however, the cattle here were not "lawfully at large," if, as the trial court found, E. Paul cattle were willfully and intentionally allowed to trespass. Willful or intentional trespass of livestock can take the form of a deliberate driving of the livestock upon the lands of another, *Swanson v. Groat*, 12 Idaho 148, 85 P. 384 (1906); or as in *Legg v. Barinaga*, 92 Idaho 225, 440 P.2d 345 (1968), it may result from an invasion by the livestock following overstocking of adjacent grazing land.

■ The district court held that Pete had met his burden of proving a willful and intentional trespass. "Appellate review is necessarily limited to ascertaining whether the evidence supports the findings of facts, and whether the findings of fact support the conclusions of law." *Morris v. Frandsen*, 101 Idaho 778, 621 P.2d 394 (1981). Testimony and other evidence supports the district court. Pete described not only a single instance of observing E. Paul putting his cattle onto Pete's fields, Tr., p. 62, but also repeated incidents. During cross-examination relative to Pete's testimony of repeatedly finding E. Paul's cattle within a fenced area of his fields, the following exchange occurred:

Q. Did you ever witness him [E. Paul] deliberately opening that fence or the gate on that fence on that penned area to the south of your property and drive his cattle onto yours?

A. Well, it was like this, the gate would be shut one day and the next day it was open. I don't know if cows has hands or what. Tr., p. 63.

Pete also testified to circumstances such as described in the *Legg* case:[2]

Q. But you couldn't testify to the fact that Paul was underfeeding the cattle or overgrazing the property in July of 1984?

A. I can from the end of July on.

Q. Beginning with the end of July?

A. That's right.

Q. What do you know about Paul's feeding practices?

A. Most of these cattle migrated and come out of this here what they call the Appletree deal, and he put them in this fence down there by his barn, home place, whatever you want to call it. And the horses had been in there, I don't know, ten, twelve, however many head, and some of these cows. And that was pastured off until it looked like you had went out there with a plow and plowed it. Tr., p. 60.

Thus, we reverse the trial court's conclusion that the herd district was valid, but affirm its holding that Pete met his burden of proving a willful and intentional trespass.

## II

■ Pete's cross-appeal challenges the district court's reduction of damages. The district court originally awarded a judgment against E. Paul in the sum of $2,070. This included compensation for pasturage of E. Paul's livestock. A portion of the property on which the livestock grazed was BLM ground to which Pete owned grazing rights. Upon consideration of E. Paul's motion to alter judgment, the court reversed itself on the ground that the forage consumed was on federal property and Pete had not shown that he had suffered damages as a result of E. Paul's livestock grazing there.

The district court's decision to alter judgment based on amended findings was within its discretion, I.R.C.P. 52(b), and will not be overturned in the absence of a showing of abuse of that discretion. *Bair v. Barron*, 97 Idaho 26, 32, 539 P.2d 578, 584 (1975). Additionally, the trial court's findings on the question of damages will not be set aside where based on substantial and competent, albeit conflicting, evidence. *Idaho Falls Bonded Produce v. General Mills*, 105 Idaho 46, 665 P.2d 1056 (1983);

---

2. [A]n owner of livestock is guilty of wilful or intentional trespass, where he turned the stock out to graze on his own land or on the public domain, where there was insufficient pasturage or water on such land to meet the needs of the stock, with the result that the animals went on to adjoining land owned by another in search of pasturage or water. (Citations omitted). 92 Idaho at 228, 440 P.2d at 348.

*Hafer v. Horn,* 95 Idaho 621, 515 P.2d 1013 (1973).

Pete argues that the forage lost was not limited to just BLM property, but also loss from surrounding acreage. While the record and exhibits indicate an area of unauthorized grazing larger than just the BLM ground, the reduction in damages was due to Pete's failure to give sufficient proof of damages, not just the area of the unauthorized grazing. "Plaintiff [Pete] did not prove, by a preponderance of the evidence, that the pasturage was depleted to such an extent by defendant's animals that he was not able to graze his animals, nor did plaintiff prove he has suffered any damages as a result of the defendant's animals eating said forage." Memorandum Decision and Order, R., p. 45. The record supports the finding of the district court.

Therefore, we affirm the district court's reduction of damages.

### III

■ After the entry of the district court's judgment for damages against E. Paul, Pete filed pursuant to I.C. § 8–509 (Supp.1987) a motion for continuing garnishment against the wages of E. Paul's spouse, Paula Miller. Following a hearing, the court denied the motion on the ground of Pete's failure to name Paula as a party defendant. The district court reasoned that allowing a garnishment of Paula's wages without her having been made a party defendant, and with the judgment having been entered only against her husband, would deny her due process of law.

We agree with the district court's conclusion that the joinder of a spouse as a party defendant was a necessary prerequisite, under I.C. § 8–509(b) which reads:

(b) When the garnishee is the employer of the judgment debtor, the judgment creditor, upon application to the court, shall have issued by the clerk of court, a continuing garnishment directing the employer-garnishee to pay to the sheriff such future moneys coming due to the judgment debtor as may come due to said judgment debtor as a result of the judgment debtor's employment. This continuing garnishment shall continue in force and effect until the judgment is satisfied. The creditor shall be solely responsible for insuring that the amounts garnished do not exceed the amount due on the judgment.

The language of I.C. § 8–509 is specifically limited to a "judgment creditor" and a "judgment debtor." "A well-settled rule of construction is that the words of a statute must be given their plain, usual and ordinary meaning in the absence of any ambiguity." *Walker v. Hensley Trucking,* 107 Idaho 572, 573, 691 P.2d 1187, 1188 (1984); *Nagel v. Hammond,* 90 Idaho 96, 408 P.2d 468 (1965). A judgment debtor according to *Black's Law Dictionary* (5th ed. 1979), p. 758 is, "A person against whom judgment has been recovered, and which remains unsatisfied." Paula, having not been a named party defendant, clearly did not qualify as a judgment debtor and, hence, was not within the scope of I.C. § 8–509(b).[3]

The district court's denial of the motion for a continuing garnishment is affirmed.

Each party to bear one-half of the costs on appeal exclusive of the printing of briefs and filing fees.

DONALDSON, J.[*], and McQUADE and McFADDEN, JJ. Pro Tem., concur.

SHEPARD, Chief Justice, concurring in part and dissenting in part.

The district court in the instant case held that under the provisions of I.C. § 25–2402, the herd district was invalid only as to that portion of public lands administered by the

---

**3.** Neither of the parties in their briefing in this Court favored us with including in their points and authorities the provisions of I.C. § 8–509(b) which was enacted into law in 1985. 1985 Idaho Sess. Laws ch. 143, § 1, p. 388. Wondering what nature of beast a motion for a continuing garnishment might be, the 1985 amendment was eventually found in pocket parts to Volume 2 of the Idaho Code.

* DONALDSON, J., sat and participated fully in the decision and opinion prior to his death.

BLM, but that the district was otherwise effective. The majority opinion parallels the dissent of Bistline, J. in *Benewah County Cattlemen's Association, Inc. v. Board of County Commissioners of Benewah County*, 105 Idaho 209, 668 P.2d 85 (1983), and holds in Part I of the instant case that the entire herd district is invalid due to the inclusion of the BLM land, thus effectively overruling *Benewah*.

The district court herein, and in my view correctly, relied upon *Benewah*. The majority herein suggests that the instant case can be readily distinguished from *Benewah*. I disagree. In *Benewah* the Court examined a county ordinance prohibiting livestock from grazing on property other than that of the owner, which applied throughout Benewah County. In *Benewah* the appellant cattlemen argued, "that since the ordinance does not expressly exempt the areas of incorporated cities within the boundaries of the county ... it constitutes an attempt by the county to exercise authority over lands located within incorporated cities and is thus void." The Court stated:

> We agree with appellants to the extent that the ordinance is without force and effect within the limits of the incorporated municipalities located in Benewah County. However, as noted in this Court's recent decision in *Hobbs v. Abrams*, 104 Idaho 205, 657 P.2d 1073 (1983), such does not invalidate the ordinance nor make it ineffective in the balance of the county. *See also Clyde Hess Distributing Co. v. Bonneville County*, 69 Idaho 505, 210 P.2d 798 (1949). *Id.* at 212, 668 P.2d 85.

Hence, I see no rationale by which the instant case can be distinguished from *Benewah*.

Just as in *Benewah* I would hold that the ordinance of Bannock County is not in conflict with other general laws of the state:

> We hold first that the legislature has not preempted the field of livestock control as asserted by the appellants; secondly, even assuming some legislative exercise of livestock control, we hold that the extension or amplification of that control

by county ordinance is not prohibited in the absence of constitutional or statutory provisions clearly evidencing intent on a state-wide basis to permit livestock to freely roam and graze regardless of the ownership or the character of the lands. *Id.* at 213, 668 P.2d 85.